*GEORGE P. BURGWYN v. ROBERT P. WHITFIELD.

*Stock—No Fence Law—Construction of Statute.*

1. By our general law, the owner of stock is under no obligation to restrain them to his own grounds, and is not responsible for their trespasses upon the lands of others not properly fenced.

2. The act of 1876-'77, ch. 60, which establishes the "no fence law" in a certain district in Northampton county, but enacts that the law shall not apply to stock kept east of prescribed limits "*provided*" a gate be kept at a certain point, is not intended to cast upon the outside parties the bur-den of keeping up such gate, at the peril of being responsible for the trespasses of their stock within the boundaries. The word "provided" should be construed to mean "unless."

(*Jones* v. *Witherspoon*, 7 Jones, 555; *Laws* v. *R. R. Co.*, *Ibid*, 468, cited and approved.)

CLAIM and DELIVERY tried at Spring Term, 1878, of Northampton Superior Court, before *Seymour, J.*

This action was brought to recover the possession of a hog which was admitted to be the plaintiff's property. A de-mand was made upon the defendant who refused to deliver the property, and claimed the right to hold the same under the provisions of chapter 60, p. 684 of the acts of 1876–'77, until double damages were paid him for the injury commit-

---

*Smith, C. J., did not sit on the hearing of this case.

ted by the hog upon his growing crop on a farm in Occo-
neechee Neck, for which trespass and injury the defendant
had distrained the hog.   The plaintiff refused to pay the
damages and insisted that said act was unconstitutional, and
that he came within the second proviso of section 6, which
is as follows: "This act shall not apply to stock kept east of
Wheeler's swamp, provided a gate is kept up at Bull Hill
mill house, so as to prevent stock from passing over the
bridge across the run of said swamp." The jury found that
the hog was kept east of Wheeler's swamp and no gate was
kept up at said mill house.   Thereupon the plaintiff moved
for judgment on the ground that the act did not make
Wheeler's swamp a lawful fence, and that it was unconsti-
tutional.   During the controversy the property was taken
from defendant by the sheriff and delivered to plaintiff, and
the court gave judgment that he retain possession, and the
defendant appealed.

*Messrs. W. Bagley* and *Mullen & Moore*, for plaintiff.
*Mr. R. B. Peebles*, for the defendant.

DILLARD, J.   The cultivators of land in a certain bend of
Roanoke river in Northampton county, known as Occonee-
chee Neck, having no fence around the whole or the separate
parcels of land lying therein, the legislature at the session
of 1876, ch. 60, passed a private law for their benefit, wherein
it was enacted that the river, a rail fence running from Fai-
son's corner on the river to mud castle, and thence to
Wheeler's swamp at the head of Bull Hill mill pond, and
the run of said swamp from the head of said mill pond to
the river, should be sufficient as a fence, with a declaration
in the 6th section of the act, that the act should not apply
to stock kept north of the rail fence constituting part of the
boundary, unless the fence was kept in good and lawful con-
dition, nor to stock kept east of Wheeler's swamp, provided

a gate was kept up at the mill-house where a bridge crossed the run of the swamp, so as to prevent stock passing into the Neck.

After the passage of the act, the hog of the plaintiff, kept east of Wheeler's swamp, was found inside of the Neck doing damage to the crop of the defendant, when defendant, claiming the right under the provisions of the private act, took it up and notified plaintiff thereof, and of his purpose to hold until he paid damages as provided in the act, and thereupon the plaintiff brought this action of claim and delivery, and the defendant admitting the right of property in the plaintiff attempted to justify under the said private act.

On the trial the jury, in response to an issue submitted to them, found that no gate was kept up at the mill house where the bridge crosses the run of the swamp, and on motion for judgment by plaintiff on the verdict, it was adjudged by the court that the plaintiff was entitled to retain his hog, which had been taken out of defendant's hands by the sheriff and delivered to him, and costs of the action were adjudged against defendant, with which judgment defendant being dissatisfied appealed to this court.

At common law it was the duty of the owner of stock in England to keep them under restraint and prevent their going on the lands of a neighbor, and if he failed to do so, he was responsible for any damage they might do. But at an early day in the settlement of this country, only such parts of the land being enclosed as were under cultivation, and the English rule therefore not being adapted to the situation and circumstances of the settlers, the usage obtained to allow stock to go at large, and very soon this usage was legalized indirectly by a statute making it the duty of every planter, under heavy penalty, to keep a fence five feet high around his cultivated ground during crop time, unless where there was a navigable stream or other

deep water course that was sufficient in place of a fence, as now brought forward in Bat. Rev., ch. 48, § 1.

And besides this, other legislation was passed providing for the assessment and payment of damages for the ravages of stock on crops, under a lawful fence, and for injury to stock by cultivators not having a lawful fence, together with enactments making it indictable to injure stock in the range or within any field or pasture not surrounded by a lawful fence.

From this course of legislation in our country it plainly results that the rule of the common law as to keeping stock under restraint, if it was ever applicable, has been long ago abrogated here as decided by this court in the case of *Jones* v. *Witherspoon*, 7 Jones, 555; so that now stock may lawfully be allowed to range at large without the right of any one to recover for their trespasses, or do otherwise than drive them off their premises without hurt, unless he have a fence as required by law. *Jones* v. *Witherspoon, supra; Laws* v. *R. R. Co.*, 7 Jones, 468.

The plaintiff, then, consistently with this state of the law, had the right to let his hog go at large, and if it wandered upon the defendant's crop in the Neck and did him a damage, defendant could not recover therefor or be authorized to take up or do any injury to the animal unless he had a lawful fence as required of every planter under the general law, or had something under the private act under which he justifies which shall be sufficient in place of an actual fence. In this case there is no pretence that defendant had an actual fence, and therefore he had no right to take up and detain the plaintiff's hog, or make claim for damages under the general law, but the claim is that he and the other cultivators in the Neck had a legislative fence, one made by the private act, consisting of the river in part, Faison's rail fence in part, and the run of Wheeler's swamp in part; and that plaintiff's hog being found on the crop of

defendant in the Neck, defendant in the express terms of the act was authorized to distrain and hold the hog until the double of the actual damage done was paid him.

The words of the statute are, "this act shall not apply to stock kept east of the swamp, *provided a gate be kept up at the mill house* so as to prevent them from passing over the bridge across the run of the swamp," and in the literal sense of the words, the defendant claims that he was at liberty, no gate being kept up, to distrain plaintiff's hog or that of any other person outside of the Neck, which might trespass upon him. Such a construction of the act as it seems to us leads to an absurdity and manifest injustice. Upon that view, all the stock outside of the Neck are liable to be distrained and held if there be no gate, but not so liable if there be a gate to keep them back; whereas the policy of our law has always been to provide for the going at large of all stock except as limited and restrained by the lawful fences of planters, and not to create responsibility for their trespasses except made upon premises surrounded by a lawful fence.

In construing a statute it is laid down as a rule by which courts ought to be guided, to look at the words and construe them in the ordinary sense, if such construction would not lead to absurdity or manifest injustice; but if it would, then they ought to vary and modify the words used, so as to avoid that which it certainly could not have been the intention of the legislature should be done. Brown's Legal Maxims, 552. It is also an established rule in the exposition of statutes that the intention of the legislature is to be gathered from the words used in connection with the whole act and every part thereof compared together, and if the intention can be clearly collected, the courts will give effect to it, however incorrect or ungrammatical some of the words used may be. Dwarris on Statutes, 144 and 176.

Guided by these rules we think there can be no question that the object of the private act under consideration was to

legislate into existence a substitute for an actual fence for the benefit of the defendant and other croppers within the Neck, with the right to compensation for trespasses of outside stock, not so absolutely and in every event, but only subject to the maintenance of the rail fence in lawful condition, and to the keeping up of a gate at the mill house on the swamp so as to keep out the stock of others.   It was a pre-requisite to any right of distress and damages that the fence aforesaid should be kept in lawful condition and the gate kept up at the mill house by some body; and it is definitely so imported in the language employed in regard to the rail fence; and whilst the phrase " provided a gate is kept, &c.," is obscure, yet interpreted in view of the context it is manifest that the word "*provided*" is used in the sense of "*unless*."   This construction avoids absurdity and is consistent with the clear intention of the legislature and justice to all parties.

It is urged however by the defendant that it was enacted that the act should not apply to stock kept east of the swamp provided a gate was kept up at the mill house, in order to throw the burden of the gate on the persons living outside of the Neck.   Such a construction as it appears to us is forbidden by several considerations: 1st, no reason appears why persons living east of the swamp should keep up a gate to protect defendant any more than the persons living north of the rail fence should keep up that fence in a lawful condition ; and 2nd, a decent respect to the legislature forbids the idea that that body would put such a burden on the outsiders for the benefit of those residing within the Neck, or if they did so intend, they would put the burden without saying who in particular was to bear it, whether those near, and how near to the swamp; and 3rd, it is not to be imputed to the legislature that they would intend to grant peculiar privileges to a few at the expense of a large number, thereby running the hazard of objection to the act on the

score of its being unconstitutional, into which question we do not enter as it is unnecesary to the determination of this case.

Upon a careful consideration of the act under which the defendant attempts to justify, it is the opinion of this court that the right to distrain and hold plaintiff's hog did not accrue to him, because no gate was kept up at the mill house as contemplated by the act, which was a pre-requisite to that right.

Ne error. Affirmed.