LOUIS WEITZMAN, as Administrator, etc., of HARRY WEITZMAN, Deceased, Appellant, *v.* NASSAU ELECTRIC RAILROAD COMPANY, Respondent.

*Negligence — duty of a railroad company to a person who through his own negligence has been struck by its car and has fallen upon the fender — custodian of a five-year-old child permitting it to cross a street while within her sight — proof as to how quickly a car could be stopped with the appliances commonly in use.*

A child five years of age, upon being struck by an electric street car, fell upon the fender and was carried along for a distance of from 32 to 150 feet, when he rolled from the fender in front of the advancing car and was run over and killed.

*Held,* that, assuming the child to have been *sui juris* and that his falling upon the fender resulted from his contributory negligence, it was the duty of the railroad company, when the child had reached a position upon the fender, to have prevented the injury and death of the child, if it had time, and could have done so by the exercise of reasonable care, and that the question whether or not the railroad company discharged this duty should have been submitted to the jury;

That a charge to the jury that "the accident, if it happened, and the damage, if it was occasioned, and the actionable injury, if there is one, came at the time the railroad car struck his person, and no matter what happened afterwards, while that may have increased the injury, it has not increased the liability of the company. * * * The whole charge is negligence, and if the defendant was negligent and the plaintiff or the child was free from negligence at the time the actual collision occurred, you are not to render a verdict in this case because of another negligence which you may find the motorman committed after the actual collision. Their right of action was made out then, if it was made out at all, and there can be no case here of the picking up of the child upon the fender giving a right of action, or a right of action arising by reason of something that occurred afterwards; that would be entirely illegal and you must dismiss it from your minds," was erroneous;

That, assuming that the child was *non sui juris*, it was a question for the jury to decide whether the custodian of the child, an adult sister twenty four years of age, was guilty of negligence in permitting the child to cross the street unattended, although within her sight.

*Semble,* that proof offered on behalf of the plaintiff, by an expert motorman, who had not made an examination of the particular apparatus in use by the defendant, that the car, if equipped with the appliances commonly in use, could have been stopped within a space of twenty feet, was competent and should have been received.

APPEAL by the plaintiff, Louis Weitzman, as administrator, etc., of Harry Weitzman, deceased, from a judgment of the Supreme

Court in favor of the defendant, entered in the office of the clerk of the county of Kings on the 11th day of April, 1898, upon the verdict of a jury, and also from an order entered in said clerk's office on the 16th day of February, 1898, denying the plaintiff's motion for a new trial made upon the minutes.

*Louis J. Vorhaus* [*William Grossman* with him on the brief], for the appellant.

*Henry Yonge* [*Clarence J. Shearn* with him on the brief], for the respondent.

WOODWARD, J.:

Harry Weitzman, plaintiff's intestate, was, on the evening of the 9th day of May, 1897, upon Rockaway avenue, in the city of Brooklyn. He was at that time about five years of age, and was in the act of passing from a candy store at No. 386 to his home on the opposite side of the street, where his sister, a young woman of twenty-four, awaited him upon the veranda. He was about seventy-five feet from the corner of Glenmore avenue, and the car of the defendant, at the time the child left the sidewalk to pass over the street, was at this corner. The distance from the curb line to the first track of the car line of the defendant is approximately ten feet, so that the child traveled ten feet while the car with which he collided was passing over the seventy-five feet of space. When the child reached the track, and after he had passed over the first rail, he was struck by the fender of the defendant's car. The child, as the evidence of the witnesses show, was landed upon the fender, and in this position was carried a distance of from thirty-two to one hundred and fifty feet, although the defendant's motorman testifies that he saw the child twenty feet before he struck him, so that the car, conceding the estimates made by the defendant's own witnesses, must have run at least fifty-two feet after the motorman saw the plaintiff's intestate in a position of danger. The defendant's motorman testified that, with the car traveling at the rate it was then going, loaded as it was, it could have been stopped in forty-five feet. The trial court refused to allow the plaintiff to show by an expert motorman that the car, if equipped with the appliances commonly in use, could have been stopped within a space of twenty feet. While it is not necessary, in

view of the conclusion which we have reached upon other points raised
by the appellant in this case, it may not be out of place to state that this
ruling is not in harmony with the authorities in this State. "It is,"
say the court in the case of *Costello* v. *The Syracuse, Binghamton
& New York Railroad Co.* (65 Barb. 92), "the duty of railroad
companies to use, upon their trains, all improvements in machinery,
or in construction of cars, &c., commonly used by other companies,
and it is negligence if they do not use them, for which they are liable
to a person injured, if the improvement would, in any appreciable
degree, have contributed to prevent the injury.    *    *    *    We
must assume that the plaintiff, if permitted to give the proof, would
have shown that if the patent brake had been used, the train could
have been stopped within the shortest distance," etc.    The railroad
company owing the duty to the plaintiff's intestate, and to the pub-
lic, to have its cars equipped with the best appliances, it was com-
petent for the plaintiff's witness to testify as to the distance within
which a car properly equipped might have been stopped.    An appeal
was taken in the case above cited, but was dismissed without an
opinion. (55 N. Y. 641.)    "It has been held," say the court in the
case of *Smith* v. *New York & Harlem R. R. Co.* (19 N. Y. 127),
"that railroad companies are bound to avail themselves of all new
inventions and improvements known to them, which will contribute
materially to the safety of their passengers, whenever the utility of
such improvement has been thoroughly tested and demonstrated.
*    *    *    Undoubtedly this rule is to be applied with a reasonable
regard to the ability of the company, and the nature and cost of
such improvements, but within its appropriate limits it is a rule
of great importance, and one which should be strictly enforced."
This rule, in effect limiting the duty of the railroad to the pass-
enger, was considered in the *Costello Case* (*supra*), and the court
say : "Railroad companies are undoubtedly bound to supply their
trains with brakes, and if a person is injured on or crossing the
track, and the injury could have been avoided by the use of
brakes, the omission to have them, or to use them, would be such
negligence as would render them liable to the person injured.
If they are obliged to have some brake, the public safety requires
that it should be the best in use.    They cannot use an old brake
which will not stop a train in less than 1,000 feet, when running

ten miles per hour, when other companies use brakes that will stop a train in 500 feet, moving at the same rate of speed. A company is as much bound to prevent doing injury to a person on its track, by using all the facilities that experience has provided for the purpose, as the person on the track is bound to use all the means in his power to escape the injury, when he is aware that it is impending."

In the case at bar the offer was to prove that the car might have been stopped by the defendant in time to have avoided the collision. It was shown that the witness was an expert motorman with a large experience; that he was familiar with the leading systems generally in use in the equipment of electric railroads, and that he was an electrician, and it seems to us that the mere fact that he had not made an examination of the particular apparatus in use by the defendant, did not disqualify him from testifying as to the distance within which a car properly equipped might have been stopped. If the car of the defendant, properly equipped, could have been stopped in time to have prevented the accident, after the motorman saw the child approaching the track, the jury were authorized to find that it was negligence on the part of the defendant to have permitted the collision, notwithstanding the negligence of the child in getting into a position of danger, and it was competent for the plaintiff to show by this witness that the car, if properly equipped, might have been stopped within the twenty feet after the motorman testifies that he saw the child approaching. "It is the duty of the carrier," say the court in the case of *Curtis* v. *The Rochester & Syracuse Railroad Company* (18 N. Y. 534), "to provide perfect machinery, and if he has failed in this, it devolves upon him to show the excuse, if any," and this is, in our opinion, the view which the trial court should have taken of the evidence offered by the plaintiff. He had a right to show that a car, equipped with proper machinery, and such as was in common use, might have been stopped in time to have prevented the original contact with the child, and it would then have remained for the defendant to have shown that the car which it was operating was properly equipped. In the case of *Hegeman* v. *The Western R. R. Corporation* (13 N. Y. 9) it was held that: "The evidence of the utility and use of the safety beam was properly admitted. It had been used in New Jersey eleven years before this accident, and upon some of the Albany and Buffalo

roads, from the latter part of the year 1846, and in 1851 was intro-duced upon the road of the defendant. Whether the adoption of this improvement, under all the circumstances, was a necessary or proper precaution on the part of the defendant, was correctly sub-mitted to the jury."

These cases cited discuss the duty of the carrier to its passengers. Of course, the duty of a carrier to its passengers is higher than that which it owes to others of the traveling public, the latter being only the use of ordinary care, while as to the former, in many instances, it may owe the highest degree of care that human foresight can provide. But while I have in mind the distinction between the degrees of care which are requisite in the two characters of cases, they still bear on the question of the duty of the carrier to the traveler on the highway and show what it is bound to do as an exercise of reasonable care.

The child was not killed by the original contact, as far as appears from the evidence, but was picked up on the fender and carried a distance of from 32 to 150 feet, when he rolled off from the fender in front of the still-advancing car, and was run over and killed, the car stopping within its own length after the child had fallen. The learned trial court charged the jury that " the accident, if it happened, and the damage, if it was occasioned, and the actionable injury, if there is one, came at the time the railroad car struck his person, and no matter what happened afterwards, while that may have increased the injury, it has not increased the liability of the company.  *  *  *  The whole charge is negligence, and if the defendant was negligent and the plaintiff, or the child, was free from negligence at the time the actual collision occurred, you are not to render a verdict in this case because of another negligence which you may find the motorman committed after the actual collision. Their right of action was made out then, if it was made out at all, and there can be no case here of the picking up of the child upon the fender giving a right of action, or a right of action arising by reason of something that occurred afterwards; that would be entirely illegal, and you must dismiss it from your minds." In this we are of opinion the trial court was in error. The law does not contemplate that a street railroad corporation shall become a modern Juggernaut, with its sacrificial car traversing

with relentless energy the streets and avenues of our populous cities, running down the aged, the feeble and the helpless, who may chance to cross its path, or that, having gathered them into its net, it shall carry them along and offer them as a sacrifice to the cruel wheels at the pleasure of the motorman. Conceding that the plaintiff's intestate was *sui juris,* and that he was, as a matter of law, guilty of contributory negligence in stepping upon the track of the defendant at the same moment that the car arrived at the point of contact, the evidence in the case shows that the child was not killed by the original impact, but that he was picked up on the fender and carried a considerable distance, when he finally rolled off, and was crushed under the wheels. To say that the defendant owed this child no duty ; that it is responsible for no degree of negligence on the part of its servants after it had struck the child and failed to kill him, is to utterly mistake the policy and the rules of law. Whatever may have been the duties or obligations of the parties up to the moment that the child was picked up on the fender, there can be no question as to the obligation of the defendant after that feat had been accomplished, and a failure to discharge that obligation was negligence, to which the child, under the circumstances, could not contribute. It was the duty of the defendant, as we have already pointed out, to equip its cars in such a manner as to reduce to a minimum the chances of accident. The duty to equip the cars with fenders carries with it the duty to so operate them as to accomplish the end for which they were designed, and a human being, having been gathered into one of these fenders, no matter by what degree of negligence on his part, imposes upon the defendant the immediate duty of so operating the car as to afford him an opportunity to be taken from his dangerous position. Whatever the degree of negligence on the part of the individual in the original contact, that negligence culminated in the accident which landed him in the net of the fender. From that moment a new relation existed between the parties, and any act or omission on the part of the defendant amounting to a lack of the care demanded by the situation and resulting in the death of plaintiff's intestate, is sufficient to charge the company with negligence. It is not to be understood that the defendant becomes an insurer of every person who is caught in its fender, but simply that it is bound to use that same degree of

care which a reasonably careful and prudent man would, or ought to use under the same circumstances, and this is always a question for the jury to pass upon. When the plaintiff's intestate reached a place upon the fender of defendant's car, the defendant had notice that the child was in a dangerous position, and if it had time, and with the exercise of reasonable care could have prevented the injury or death of the child, it was its duty to do so, and a failure on its part was negligence which entitled the plaintiff to recover, and the question of whether the defendant did or did not discharge this duty should have been submitted to the jury. The rule of law is that, "notwithstanding negligence upon the part of the person injured, he may recover if the railway company, after such negligence occurred, could, by the exercise of ordinary care, have discovered it in time to have avoided inflicting the injury." (7 Am. & Eng. Ency. of Law [2d ed.], 437.)

This rule of law, dating from the well-known donkey case (*Davies* v. *Mann*, 10 M. & W. 546), has modified the old-time rule in the interests of justice, and in response to an expanding jurisprudence, and it can hardly fail to result in producing a higher degree of care on the part of those intrusted with the important work of transporting passengers over our highly congested thoroughfares, as well as in doing justice to a considerable number of people who must otherwise suffer wrong without a remedy. Walpole's Rubric of the Common Law tells us, at page 222, that "Davies had a donkey which he 'hobbled' and turned into the high road. Mann's waggon and horses came along at a smartish pace, knocked down the donkey and ran over it. In an action by Davies against Mann for the injury done to the donkey, the defendant contended that the plaintiff's negligence in leaving the donkey, hobbled, in the highway, contributed to the donkey's death. But the court held that this was no justification, if by driving carefully the defendant could have avoided the donkey, and pulled up in time to let him get out of the way."

The doctrine of this case was adopted in this State, and in the case of *Button* v. *The Hudson River R. R. Co.* (18 N. Y. 248) the court say : " The verdict of the jury shows that they must have been misled by the charge. Upon the evidence before them they could not have said that the deceased was not chargeable with negligence, amounting to utter recklessness, in placing himself in the

position in which he was first discovered. If in his senses, as he must be presumed to have been, he courted his own destruction. Under these circumstances he must be regarded as having co-operated with the defendants to produce his death. *Unless the jury could be made to believe that, after deceased was discovered, the defendants, by reasonable care, could have avoided the fatal result, they were not liable."*

In the case of *Kenyon* v. *N. Y. C. & H. R. R. R. Co.* (5 Hun, 479) the court say : " Evidence having been given upon the trial tending to prove that the engine driver might, by the exercise of ordinary care, have stopped the engine, and so have avoided the injury to the plaintiff, the court erred in granting a nonsuit. In such a case, neither the fact that the plaintiff was wrongfully on the defendant's railroad, nor the fact that his own negligence, or that of his parents, contributed to the injury, constitutes a bar to a recovery. Neglect on the part of the person in charge of the engine to use ordinary care to avoid injuring a person on the track is, in contemplation of law, equivalent to intentional mischief. He has no more right to run over a person, lawfully or unlawfully, rightfully or wrongfully, on the track, if he can, by the exercise of ordinary care, avoid doing so, than he has to shoot him. Such a case furnishes a just and well-established exception to the general rule that contributive negligence on the part of the plaintiff will defeat a recovery. \* \* \* In the case before us the court, instead of granting a nonsuit, should have submitted to the jury the question whether, considering all the circumstances of the case, there had been an omission on the part of the engine driver of ordinary care to avoid the injury, and to instruct them that if they should find in the affirmative, the presence of the plaintiff upon the track did not bar a recovery."

" The general rule no doubt, is," say the court in the case of *Green* v. *Erie Railway Co.* (11 Hun, 333), " that the plaintiff, in an action for negligence, cannot succeed if it is found by the jury that he himself had been guilty of negligence or want of ordinary care which contributed to cause the accident. But this rule, in many cases, is qualified by another one, which is that though the plaintiff may have been guilty of negligence, and although that negligence may in fact have contributed to the accident, *if the defendant could in the*

result, *by the exercise of ordinary care and diligence, have avoided
the mischief which happened,* the plaintiff's negligence will not
excuse him.   * * *   We think it was a proper question for the
jury, whether the defendant was not guilty of such gross negligence
as was equivalent to intentional mischief." (See, also, *Melhado v.
Poughkeepsie Transportation Co.*, 27 Hun, 99.)

"The negligence," say the court in the case of *Austin* v. *The
New Jersey Steamboat Co.* (43 N. Y. 82), "must be *proximate* and
not *remote*. It must be a negligence occurring at the time the acci-
dent happened. Notwithstanding the previous negligence of the
plaintiff, if at the time when the injury was committed it might
have been avoided by the defendant by the exercise of reasonable
care and prudence, an action will lie for the injury."

"The testimony shows," say the court in the case of *Barker* v.
*Savage* (45 N. Y. 194) "that the driver not only could but did in
fact see the plaintiff some fifteen feet distant from her, and from
the testimony it is probable he could have seen her at a greater dis-
tance. Under these facts, and the other testimony, it was a proper
question for the jury whether he could not have stopped his horse
in time, or so have guided it as to have avoided running against her.
If he could, his negligence, and the consequent liability of the
defendant for the injury, so far as this question was concerned, was
established."

"There is," say the court in the case of *Distler* v. *Long Island
R. R. Co.* (151 N. Y. 429), "another ground upon which we think
the judgment should be reversed. Even if it were assumed that
the plaintiff was negligent in stepping upon a moving train, yet it
cannot be held, as a matter of law, that such negligence in any
proper sense contributed to his injury. *The danger which attended
the boarding of a moving train had been passed.* The plaintiff was
upon the train, and in a situation of safety, unless there was an
accident or some mismanagement. His injury can hardly be said
to be the proximate result of stepping upon the moving train, or to
have been occasioned by his inability to safely reach a seat because
the car was in motion. The direct and proximate cause of his
injury was the mismanagement of the train, causing a sudden jerk
or lurch which threw the plaintiff therefrom, or at least whether that

was the cause was a question of fact for the jury. We are of the opinion that the questions of the defendant's negligence and the plaintiff's freedom from contributory negligence were, under the evidence, questions of fact and should have been submitted to the jury."

In the case of *Howell* v. *Rochester Railway Co.* (24 App. Div. 502), where plaintiff's intestate, five years old, was playing upon the street, and in his attempt to cross the track in front of an advancing car the fourth time was struck "by the fender or guard in front of the car, fell upon the same, rolled over two or three times while in that position, was carried along for some distance, was finally jolted off and the forward wheels of the car passed over him," a verdict in favor of the plaintiff was sustained. In this case it was held not error for the trial court to charge " that, as the motorman saw the child ahead playing in the street, it was his duty to have his car under control until the danger was passed," and this was clearly the duty of the motorman in the case at bar after he had discovered plaintiff's intestate.

The rule, as it exists in this State, was concisely summed up by Mr. Justice BRADLEY in the case of *McKeon* v. *Steinway R. Co.* (20 App. Div. 601). Here the plaintiff had, by his own negligence, brought his wagon into collision with a car of the defendant, resulting in a runaway of the plaintiff's horse, throwing him upon the track of the defendant some 200 feet from the place where the original accident occurred. While lying upon the track in a helpless condition the plaintiff was struck by another car of the defendant and seriously injured. The question whether the collision with the wagon was chargeable solely to the negligence of the defendant or attributable to any contributory negligence of the plaintiff was submitted to the jury, and the court charged them in effect that, if any negligence of the plaintiff contributed to that collision, what followed was in like manner affected by such negligence, and that he could not recover for his injury suffered by the car running upon him when he was lying upon the track, if he received injury in that manner. Commenting upon this state of facts the court say : " In other words, the view of the court was that if the contact of the car with the wagon, which caused the horse to run away, was imputable to any contributory negligence of the plaintiff, the defendant was entitled to a verdict, although the latter accident

otherwise might be attributable solely to the negligence of the defendant. It may, in view of the finding of the jury, be assumed that the negligence of the plaintiff placed him in the position where he is said to have been struck by the other car, and that, therefore, the injury there received by him was in some sense the consequence of his negligence. But it does not follow that this gave legal immunity to the defendant to run its car on to him. The negligence of a plaintiff which is effectual to relieve the defendant from liability for the consequences of his negligence *must be proximate in such sense as to contribute concurrently to the result complained of.* Although the injury may not have occurred but for the negligence of the former, his antecedent negligence may not be concurrent or simultaneous in such sense as to relieve the latter from the consequences of his negligence. In other words, when a plaintiff, by his negligence, has placed himself in a dangerous position, the defendant, advised of his situation, is not for that reason legally justified in failing to use reasonable care to not injure him."

"While there is some apparent conflict," continues the court, "in the cases of the different States on the subject of the effect of contributory negligence upon the remedy, the rule about which there is no occasion for serious controversy is, that to deny to a party relief for an injury suffered by him by the culpable negligence of another, his negligence must not only contribute to the happening of the injury, but must contribute to it as a proximate cause. His negligence as a remote cause, and creating a condition of peril from which he is unable to relieve himself, does not excuse the want of care in another to avoid injuring him. * * * The plaintiff, by his complaint, alleges both the collision of the car with his wagon and the running of another car into or over him, and that this was occasioned by the negligence of the defendant. And, although those matters were alleged in a single count only of the complaint, it is not seen that upon the trial the liability for one of the alleged causes of the plaintiff's injuries could properly be made dependent upon that for the other of them."

In many of the States the rule goes one step farther, and holds that if the defendant might, in the exercise of reasonable care, have discovered the plaintiff in time to have avoided the accident, he is answerable in damages for a failure to make such discovery.

"The admitted test rule," say the court in the case of *Pickett* v. *Wilmington & W. R. R. Co.* (30 L. R. A. 257), "to which we have adverted, that he who has the last clear chance notwithstanding the negligence of the adverse party, is considered solely responsible, must be applied in contemplation of the law which prescribes and fixes their relative duties. The law, as settled by two lines of authorities here, imposes upon the engineer of a moving train the duty of reasonable care in observing the track; and if, by reason of his omission to look out for cows, horses and hogs, he fails to see a drunken man or a reckless boy asleep on the track, it cannot be denied that he is guilty of a dereliction of duty. If he is guilty of a breach of duty, we cannot controvert the propositions which necessarily follow from the admission that but for such omission, or if he had taken advantage of the last clear opportunity to perform a duty imposed by law, the train would have been stopped and a life saved."

Justice ASHE, of the North Carolina Supreme Court, well states the rule in the case of *Farmer* v. *Wilmington & W. R. R. Co.* (88 N. C. 564) where he says that whether the plaintiff was guilty of contributory negligence depends upon whether his act "was a proximate or a remote cause. If the act is directly connected, so as to be concurrent with that of the defendant, then his negligence is proximate, and will bar his recovery; but where the negligent act of the plaintiff precedes in point of time that of the defendant, then it is held to be a remote cause of the injury and will not bar a recovery, if the injury could have been prevented by the exercise of reasonable care and prudence on the part of the defendant." To the same effect is the rule as laid down by Judge Cooley in his work on Torts, at pages *70, *71, where he says : "If the original wrong only becomes injurious in consequence of the intervention of some distinct wrongful act or omission by another, the injury shall be imputed to the last wrong as the proximate cause, and not to that which was more remote." This is in harmony with the general rule laid down so quaintly by Lord Bacon (Bac. Max. reg. 1) that "It were infinite for the law to judge the cause of causes, and their impulsions one of another, therefore it contenteth itselfe with the immediate cause, and judgeth of acts by that, without looking to any further degree."

The Maryland Court of Appeals, in the case of *Baltimore & Ohio R. R. Co.* v. *Kean* (3 Cent. Rep. 716) say : " The governing principle established by the courts may now be clearly and concisely expressed in a very few words. If both parties have been negligent, but want of due care and caution on the part of the plaintiff was the direct cause of the injury, or, in other words, if the injury could not have been sustained if the plaintiff had not been careless and neglectful in providing for his safety, there can be no recovery in the action. But if, on the other hand, it is apparent from the evidence that the plaintiff, although negligent, would have suffered no injury had proper care and caution been observed by the defendant, the right of action is maintainable, and the defendant must be held liable for the damages ascertained by the proof in the cause."

The same doctrine is held in Illinois, and generally throughout the southern and western States, and, in the modified form, in this State, and we are persuaded that the judgment and order appealed from should be reversed and a new trial granted.

It is urged, however, on the part of the defendant that it is of no avail that this case should be reversed, because upon the authority of *Albert* v. *The Albany Railway* (154 N. Y. 780) the custodian of the deceased child was guilty of negligence as a matter of law, and no recovery for the plaintiff could be sustained. The case cited was an affirmance on the opinion in the court below (5 App. Div. 544), and a careful reading of the reasoning affords no ground to believe that there would be any difficulty in sustaining a judgment in favor of the plaintiff, should one be found. The facts are entirely different from those of the case at bar. In the *Albert* case plaintiff's intestate was three years and four months old, and was sent by the mother on an errand across a street in which cars were passing in both directions every few moments, in the care of a child only five years of age. " Both of the children," say the court in discussing this state of facts, " were of such tender age that neither could be expected to exercise any judgment or care for herself, or appreciate any threatening danger. They were deliberately sent into the neighborhood of a railroad track, where cars run by electricity were passing as often as once in every ten minutes. They were sent on an errand that required them to cross such track ; they were in charge

of no one, and at liberty to play about that dangerous locality as long as they chose, and in the unrestrained and careless manner that would naturally be expected from children of that age." It was under such circumstances that the court held that the mother was guilty of contributory negligence or "gross carelessness," which was sufficient to defeat a cause of action. The case at bar presents no such difficulty. The child, five years old, was in charge of her mature sister. She was permitted to cross the street to purchase candy, within sight of the sister, and it is a question for the jury whether such conduct was in the exercise of reasonable care. Mr. Justice CULLEN, in the case of *Birkett* v. *Knickerbocker Ice Co.* (41 Hun, 404), held that where the plaintiff's intestate, four years of age, was permitted to go out and play in company with her brother, a child of six years, it could not be held, as matter of law, that the mother was negligent, and we are equally clear that it would not be proper to deny to the jury in the case at bar the right to pass upon the question of the negligence of the custodian of the child, assuming the child to be *non sui juris.*

The judgment and order appealed from should be reversed and a new trial granted, costs to abide the event.

All concurred.

Judgment and order reversed and new trial granted, costs to abide the event.