HENRY JAMES JOHNSON, as Administrator, etc., of ARTHUR EDWARD JOHNSON, Deceased, Appellant, *v.* INTERBOROUGH RAPID TRANSIT COMPANY, Respondent.

First Department, July 2, 1920.

Street railways — negligence — action to recover for death of person who fell upon elevated railroad tracks when endeavoring to board moving train and was killed by following train — evidence raising question for jury — duty of railroad to trespasser and to person guilty of contributory negligence.

In an action to recover for the death of a person who attempted to board the rear car of an elevated train after it had started and who was thrown to the tracks and subsequently run over by the following train, it appeared that companions of the decedent saw him fall and that he became caught between the tracks, of which facts they notified the guard, who made no effort to stop the train or to go upon the rear platform to ascertain the facts, and who, in short, did nothing whatever in the matter. It further appeared that upon reaching the next station the friends of the decedent informed the ticket agent of the facts, who parleyed with his informants instead of doing anything in the matter until the following train had reached the next station, from which there was an unobstructed view of the place where the decedent had fallen.

*Held,* that even if the decedent fell upon the track by reason of his own negligence, a recovery might be justified if the defendant failed to exercise any care after it was advised of the perilous situation of the decedent upon its tracks, and if but for the negligence of the defendant's employees the decedent would not have been run over, and hence it was error to dismiss the complaint at the close of the plaintiff's case.

The above rule obtains even if the decedent were a trespasser.

Appeal by the plaintiff, Henry James Johnson, as administrator, from a judgment of the Supreme Court in favor of the defendant, entered in the office of the clerk of the county of Bronx on the 2d day of October, 1917, upon the dismissal of the complaint by direction of the court at the close of plaintiff's case.

*J. Arthur Hilton,* for the appellant.

*B. H. Ames* of counsel [*Frederick Allis* with him on the brief; *James L. Quackenbush,* attorney], for the respondent.

Greenbaum, J.:

This is an appeal from a judgment dismissing the plaintiff's complaint upon the conclusion of plaintiff's case. The dismissal entitles the plaintiff to every favorable inference which may be fairly drawn from the evidence given in his behalf.

The facts as established by the evidence are as follows: The plaintiff's intestate, his son, a youth of fifteen years of age, was killed on the 6th day of November, 1914, shortly after seven P. M., on one of the tracks of the Third Avenue railway structure in front of the uptown Fourteenth street station. The decedent at the time of his death was in the employ of the Western Union Telegraph Company as a messenger boy, at 91 Wall street. He resided with his father in the borough of The Bronx. He was in the habit of returning home after his day's work by means of the Third Avenue Elevated line, in the company of two other boys. On the evening when the accident happened, the three boys left the Wall street office together and became passengers of the defendant railroad company at the Hanover Square station. They took a north-bound train and got off at Chatham Square to transfer to a Bronx Park train. In order to do this it was necessary to cross a bridge, and in so doing the boys became

separated.   It so happened that young Johnson alone succeeded in boarding the train; and his companions took the next following train.   As their train proceeded uptown, they were on the lookout at each station to see if their companion was waiting for them.   At the Fourteenth street station they heard a whistle and, looking out of the window, they saw plaintiff's intestate and he observed them.   They then went toward the rear door of the rear car, and as the train was starting to pull out they saw young Johnson take hold of the stanchion on the rear platform of the train.   He ran alongside of the train and tried to jump on the back platform, and while so doing his right shoulder struck against a post that supported the extreme south end of the roof over the station platform, with the result that he lost his hold on the stanchion of the car and fell upon the track below, striking it with his buttocks. His body fell between the rails of the north-bound track. His companions, witnesses at the trial, testified that they saw him try to get up and that his body was caught between the ties.   As soon as they saw Johnson fall from the platform, his companions rushed to the front of the rear car and told the guard that a boy had fallen on the track and that he had better stop the train.   The guard merely replied, " That is all right."   He made no effort to stop the train, which, according to the evidence, had at that time reached a point between Fifteenth and Sixteenth streets.   He made no effort to go to the rear platform to ascertain whether the boys were telling the truth.   In short, he did nothing whatever in the matter.   When the train reached the Eighteenth street station the two boy friends of the deceased got off on the platform, and they testified that while standing there they saw Johnson's body still lying on the track in front of the Fourteenth street station, and that at that time they had a clear view as far south as the Ninth street station, and that the following train was not yet in sight.

These boys further testified that when they realized that the guard intended to do nothing whatever to save the boy, they went into the ticket office and told the ticket agent what had happened.   This agent parleyed with the boys and then picked up a book, apparently to get the telephone number

of the Fourteenth street station, and then told the boys that the following train had already reached that station. The boys then ran back to the Fourteenth street station along the boardwalk built alongside the wooden construction that guards the rails. When they reached Fourteenth street the boy had been run over by the oncoming train.

In addition to the testimony of these two boys, testimony was given by a passenger named Wagner, who was attracted by the circumstance that the boys told the guard that a boy had fallen on the track. He testified that when the train stopped at Eighteenth street he got off the train when he realized that the guard was doing nothing in the matter, and ran back along the boardwalk of the elevated structure just described in an effort to stop the approaching train. When he reached Seventeenth street he saw young Johnson lying on the tracks in front of the station. When he reached Sixteenth street he saw the body moving and also an arm of the boy moving. While Wagner was running towards the Fourteenth street station he waved his hands towards the approaching train. The motorman of that train apparently did not see him, and the train kept moving on and ran over the body of Johnson as he lay on the track.

Wagner testified that at the time the train ran over the boy, he had reached Fifteenth street, which was only a short distance from the north end of the Fourteenth street platform. The evidence showed that there was an unobstructed view from the Ninth street station north to the Fourteenth street station and beyond. The motorman of the train which ran over the boy was called by the plaintiff and testified that he could stop his train, at the speed at which he was then going and considering the number of cars which he was carrying, within a distance of 150 to 200 feet. The distance from Ninth street to Fourteenth street is about five city blocks, which would be about 1,250 feet.

It is of course conceded by the plaintiff's counsel that the plaintiff's intestate fell upon the track in front of the Fourteenth street station, by reason of his own negligence. The theory of the plaintiff, however, is that, notwithstanding the negligence of the deceased, the defendant failed to exercise any care after it was advised of the perilous situation of the boy

upon the track and that, but for the negligence of the defendant's employees, the boy would not have been run over.

It seems to be the settled law in this jurisdiction that, notwithstanding a person may be placed in a position of great peril by reason of his own act of negligence, it is the duty of the one operating a railroad to avoid further injury to him if, by the exercise of ordinary care, he is able to do so. In *Weitzman* v. *Nassau Electric R. R. Co.* (33 App. Div. 585) the court held that, notwithstanding one is placed in a perilous situation through his own negligence, the railway company owes a duty upon notice to it of the peril to exercise reasonable care to prevent any infliction of further injury to the one in danger. This rule has been recognized in numerous other cases. (*McKeon* v. *Steinway R. Co.,* 20 App. Div. 601; *Kenyon* v. *N. Y. C. & H. R. R. R. Co.,* 5 Hun, 479; affd., 76 N. Y. 607.)

The defendant claims that the act of the intestate in attempting to board the train after the gates had been closed and while the car was in the act of pulling out of the station constituted him a trespasser, and that, therefore, he was not entitled to the degree of care due a passenger; and that defendant owed the intestate as he lay upon its track no greater care than if he was a trespasser. Such seems to have been the view of the court in *McKenna* v. *N. Y. C. & H. R. R. R. Co.* (8 Daly, 304). In *Sheehan* v. *Nassau Electric R. R. Co.* (143 App. Div. 621), where the circumstances were quite similar to those here appearing, the court said: " The justice should have charged that decedent came to his place of peril by his own negligent act, and that the guard owed him no duty as a carrier, save that the law required him to afford such relief, using ordinary skill and judgment, as the occasion reasonably permitted."

But even if it be assumed for the purpose of this discussion that the defendant owed only such duty toward the intestate as it would owe to a trespasser placed in peril in similar circumstances, that duty would be substantially the same in both cases. In *Feldman* v. *N. Y. C. & H. R. R. R. Co.* (142 App. Div. 340; affd., 205 N. Y. 553) it was held in the case of a trespasser that, where a common carrier knew of the intestate's imminent peril from passing trains in time

to prevent them from running over her, the company was bound to use reasonable care to save her from such injury.

Applying that rule to the proofs in this case, it seems to us that the testimony unfolded upon the trial required a submission of the case to the jury in order to determine whether or not the defendant exercised that reasonable or ordinary care which would be expected of it under the circumstances. The evidence established that the guard of the train from which the intestate fell was apprised of the accident, but he made not the slightest attempt to save the boy. He did not even take the trouble to ascertain whether the boy was on the track. He could have readily gone to the rear end of the car and signaled the approaching train, which had not then yet reached Fourteenth street, by the use of a red lantern. This witness had previously admitted that when such a red lantern is waved, the motorman in charge of the following train would ordinarily stop his train immediately upon seeing the signal. He changed his testimony upon the last trial by stating that it is a rule that the motorman of an approaching train usually stops a short distance from the place where the lantern is waved. It was for the jury, however, to say which of his two statements was true and whether or not, if he had taken this precaution, the motorman on the train which ran over the boy would not, under such circumstances, have been impressed with the importance of carefully scanning the track in front of him and have discovered the boy's body in time to avoid running over him. When he reached Eighteenth street, he at least should have asked the ticket agent to telephone to the Fourteenth street station and give notice to the approaching train of the danger in which the plaintiff's intestate was. He did nothing of the kind. The two companions of the deceased themselves communicated with the ticket agent at Eighteenth street, who consumed what seemed to be unnecessary time, considering the urgency of quick action, in asking a lot of useless questions, instead of at once putting himself in communication with the Fourteenth street station. That there might have been time to avoid the accident is evidenced by the fact that the witness Wagner, who got off the train at Eighteenth street and ran on the boardwalk alongside of the track, had

nearly reached Fifteenth street before the train ran over the boy.

Respondent also contends that the duty devolved upon the plaintiff to establish that the lad was alive immediately before the train ran over him.   There was sufficient evidence on this point, if the jury believed the testimony in that behalf of the deceased's two companions and Mr. Wagner, and of the coroner's physician, who testified that there was no probability of the boy's having been killed by reason of his falling on the track at Fourteenth street.   There was abundant evidence to entitle the plaintiff to have the case submitted to the jury.   The judgment should be reversed and a new trial ordered, with costs to the appellant to abide the event.

CLARKE, P. J., LAUGHLIN, SMITH and MERRELL, JJ., concur.

Judgment reversed and new trial ordered, with costs to appellant to abide event.