McCurk, J.
(dissenting). Since the completion of the dam in about 1910 the former channel of the Mohawk Eiver extending between the dam and the summit level of the Barge Canal has been used by the State as a feeder and is a part of the Barge Canal system. The quantity of water permitted to enter the feeder at the foot of the dam is controlled entirely by the State,' and the summit level of the Barge Canal is its only outlet. The State has thus taken over for its own use and purposes the old channel of the river from the dam to the summit level of the Barge Canal and has substituted its own exclusive control of the volume of water allowed to flow therein, for what was formerly the natural flow in a natural watercourse. The State now has control of the entire situation including the power to so regulate the flow of the water as to overcome danger and to prevent damage to the claimants in time of excessive rainfall, and at the same time serve its own interests to prevent flooding and interruption of navigation on its Barge Canal system. Indeed it is plainly inferable from the evidence that had the State so regulated the water level in the dam during the season of 1945 as to prevent the flooding of the summit level of the canal and the interruption of navigation thereon because of the rainfall of October 2, 1945, it would also have thereby avoided the flooding of the claimants’ premises. Once the State put itself in a position of absolute control, its duty was no longer to be based upon the circumstances which had existed prior theretofore. A new relationship then came into existence and the State assumed a duty of care based upon its ability to protect the claimants, and the helpless inability of the claimants to protect themselves (see Bohlen on Torts, pp. 306-308; 56 U. of Pa. L. Rev. [Old Series], pp. 243-244; Scarf v. Metcalf, 107 N. Y. 211,and Weitzman v. Nassau Elec. R. R. Co., 33 App. Div. 585, 590-591), “ The law enforces the reasonable expectations *655 arising out of conduct, relations, and situations ” (Pound on Introduction to the Philosophy of Law, p. 189; Cardozo on Growth of the Law, p. 102).
The Court of Claims has found upon ample evidence that in the exercise of reasonable care the volume of water allowed to flow through the feeder could have been so regulated as to prevent the flooding of claimants’ premises and at the same time amply serve the needs and requirements of the Barge Canal system. It has also found upon ample evidence that the rainfall of October 2,, 1945, was within the realm of reasonable anticipation.
The records in evidence show that for at least fourteen years prior to the summer of 1945, the water level in the dam had been maintained substantially below the spillway, and although there were instances of excessive rainfalls in the area during that period no flooding occurred in the area of the claimants’ premises. It thus appears that the State did up to 1945 regulate its control of the water in such a manner as to serve the needs of the Barge Canal system and at the same time protect claimants and others from floods at times of excessive rainfall. Despite its present contention that it owed no duty of care to the claimants, still having voluntarily assumed to regulate the flow it should be charged with the duty of reasonable care (Glanzer v. Shepard, 233 N. Y. 236; Marks v. Nambil Realty Co., 245 N. Y. 256).
The relationship between the claimants and the State was of such a nature that the State owed to the claimants and to others within the zone of danger a duty of reasonable care to avoid the danger reasonably to be anticipated. “ The orbit of the danger as disclosed to the eye of reasonable vigilance would be the orbit of duty ” (Palsgraf v. Long Island R. R. Co., 248 N. Y. 339, 343; see, also, Ehret v. Village of Scarsdale, 269 N. Y. 198, 206, 207).
Cases cited in the opinion fo,r reversal are not in my opinion controlling here. In Stone v. State of New York (138 N. Y. 124) the State abandoned and sold the canal seven years before the claim accrued and the decision was made upon the basis that the canal no longer had any existence and the Board of Claims therefore had no jurisdiction. The statement in that opinion to the effect that in any event the State would not be liable for the damage appears to have been based upon the theory that the neglect, if any, of the State was not the proximate cause of the damage. Cases cited here involving dams are lacking in *656 several important elements present here. In none of such cases does it appear that the river channel below the dam where the flood occurred was an integral part of any artificial water or canal system under the exclusive control of the owner of the dam as here. Neither does it appear in any of such cases that the dam in question was of sufficient capacity to perform its primary purpose and function and at the same time protect property owners below the dam from danger reasonably to be apprehended. Nor does it appear in such cases that in the past the owner of the dam had in fact so regulated its facilities as to prevent flooding below at times of excessive rainfall.
I dissent and vote for affirmance.
All concur with Vaughan, J., except McCurn, J., who dissents and votes for affirmance in an opinion in which Taylor, P. J., concurs. Present — Taylor, P. J., MoCurn, Vaughan, Kimball and Piper, JJ.
Judgment reversed on the law and facts, without costs of this appeal to any party, and claim dismissed, without costs. Certain findings of fact and conclusions of law disapproved and reversed and new findings and conclusions made.