RYAN, by guardian *ad litem*, Respondent, vs. LA CROSSE CITY RAILWAY COMPANY, Appellant.

*September 5 — November 16, 1900.*

*Street railways: Injury to boy crossing tracks: Sounding of gong: Positive and negative testimony: Negligence of motorman: Contributory negligence of child: Court and jury.*

1. In an action against a street railway company for personal injuries the positive testimony of the motorman and conductor that the gong was sounded after the former saw the plaintiff and before the car struck him, is *held* to establish that as a fact in the case, as against the negative testimony of plaintiff and other witnesses that the gong was not sounded or that they did not hear it.

2. Plaintiff, a boy eight years and nine months old, was struck and injured by a street car while he was attempting to cross the tracks. The motorman testified that when he first saw the boy he was about fifty feet ahead of the car and from seven to nine feet from the track, and was going diagonally towards the track; that the car was not running over twelve or thirteen miles an hour; and that he cut off his current and applied his brakes as soon as possible, and sounded his gong. There was evidence tending to show that a car running at that speed could have been stopped within less than fifty feet, and that this car ran forty feet or more after striking the plaintiff. *Held*, that the question whether the motorman was negligent was one for the jury, but that there was nothing to show that he intended to injure plaintiff or that his conduct was reckless, rash, or wanton.

3. The plaintiff was a boy of unusual intelligence, had lived opposite the place of the accident for two years, was accustomed to cross the tracks daily to attend school, and knew all about the situation. He had just seen a car pass on one of the tracks and knew that the cars going in the other direction (one of which struck him) ran on the other track, but did not look at all to see if a car was coming on that track, and his own testimony was contradictory as to whether he listened for it. There was nothing to prevent him from seeing the approaching car or to divert his attention. *Held*, that though he was but eight years and nine months old, he was, as matter of law, guilty of contributory negligence. DODGE and WINSLOW, JJ., dissent, being of the opinion that no conduct on the part of a boy of that age can properly be held negligence *per se* and as matter of law, and, even if the rule were otherwise, that under the circumstances in this case the question of the boy's negligence should have been submitted to the jury.

APPEAL from a judgment of the circuit court for La Crosse county: O. B. WYMAN, Circuit Judge. *Reversed.*

For the appellant there was a brief by *Losey, Woodward & Lees,* and oral argument by *G. M. Woodward.* To the point that a verdict should have been directed on the ground of contributory negligence, they cited, besides cases cited in the opinion, *Downs v. St. Paul City R. Co.* 75 Minn. 41; *O'Rourke v. N. O. C. & L. R. Co.* 51 La. Ann. 755; *Dull v. C., C., C. & St. L. R. Co.* 21 Ind. App. 571; *Wolfe v. Pierce,* 57 N. E. Rep. 555.

For the respondent there was a brief by *Higbee & Bunge,* and oral argument by *E. C. Higbee.* To the point that plaintiff was too young to be held guilty of contributory negligence as a matter of law, they cited, besides Wisconsin cases cited in the dissenting opinion, *Berry v. N. Y. C. & H. R. R. Co.* 92 N. Y. 289; *Costello v. Third Ave. R. Co.* 161 N. Y. 317; *Ellick v. Metropolitan St. R. Co.* 15 App. Div. 556; *Mitchell v. Tacoma R. & M. Co.* 13 Wash. 560; *Lhowe v. Third Ave. R. Co.* 14 Misc. (N. Y.), 612; *Jones v. Brooklyn Heights R. Co.* 10 Misc. (N. Y.), 543.

The following opinion was filed September 25, 1900:

CASSODAY, C. J.   This action is brought by the plaintiff to recover damages sustained April 24, 1898, by being struck by the defendant's car, running south on Caledonia street, between Clinton and St. Paul streets, in La Crosse. Issue being joined and trial had, the jury returned a verdict in favor of the plaintiff for $1,800, and from the judgment entered thereon the defendant brings this appeal.

It appears from the record and is undisputed that at the place of the injury the defendant maintained double tracks; that such double tracks ran from the south on Mill street to St. Cloud street; then east on St. Cloud street to Caledonia street; then north, crossing in succession Wall street, Windsor street, St. Paul street, Clinton street, and Logan street, and

to Sill street, which is the next street north of Logan street, and then the double tracks turn to the east on that street; that cars going south ran on the west track, and those going north on the east track; that the plaintiff lived with his father on the east side of Caledonia street, between St. Paul street and Clinton street, about 25 feet back from the sidewalk, and the walk ran from the house to the inner edge of the sidewalk at a point about 115 feet north of St. Paul street, and about 235 feet south of Clinton street; that about 65 feet north of that walk leading to the plaintiff's home was the south line of the Horner lot, the buildings thereon having a frontage of 25 feet on Caledonia street; that the north line of the Horner buildings, projected west across Caledonia street, is identical with the south line of the Club Saloon, fronting on that street on the west side thereof; that the entrance to the Club Saloon was 140 feet south of Clinton street, and 117 feet from the street end of the Ryan walk, in a southeasterly direction therefrom, and directly opposite a point 96 feet north from the street end of the Ryan walk; that from such entrance to the south line of the Club Saloon was 10 feet; that 50 feet immediately south of the Club Saloon was occupied by the double store building belonging to B. A. Siggins; that next south of the Siggins place, on the same street, was a barber shop with a frontage of 20 feet, and that 80 feet of the frontage next south of the barber shop was occupied by dwellings.

The plaintiff was nine years old July 23, 1898, and hence was three months younger at the time of the accident. A few minutes before 6 o'clock in the afternoon of the day of the accident the plaintiff was sent by his father from his home to the Club Saloon, across the street mentioned, to get a pail of beer. He testified to the effect that after he got the beer he came out of the Club Saloon, and walked out into the street, and then walked down south by the side of the track, when he saw that a car was coming from the

south on the east track; that he waited until that car passed him going north; that after that car passed him he was going to go home; that he was walking slowly by the side of the rail, with his pail full of beer, but no cover on it; that he was struck by the car on the left side of the back of his head, and knocked down, and the hind wheels of the car ran over him and dragged him some distance and cut off his toes; that he did not hear any bell just before he was struck, nor any warning or noise, to indicate that the car was coming behind him from the north; that his pail was small, and full of beer up to about two and one-half inches from the top, and that he was carrying it in his right hand; that he was afraid he would spill it; that when he came out onto the street he went over near the street-car track right in front of the saloon, but that he was not sure about that; that he was not looking at the beer; that he had often before that time crossed those tracks, and knew that the cars ran south on the west track and north on the east track; that he did not look up north to see whether there was any car on the track when he came out of the saloon, but did look south, and saw the car at St. Paul street coming north; that he never looked up north towards Clinton street at all; that when he got onto the track he kept on walking down the track; that he did not know how near he got to the west rail of the track; that he waited for the other car to pass him; that he did not stop in the street; that he was listening for a car from the north, and thought a car might be coming down on the track on the west side; that no bell rang; that he was listening for the bell, but did not look at all; that his back was turned to the north all this time, and his face directly south; that he first turned his face to the east when he attempted to cross; that he did not look up at all to see if there was any car or pay any attention to any car from the other direction; that he did not know how far the car going north got by him before

he started to cross, but it got some little distance away;
that he was walking slowly in the street, and had not yet
started to go across the track when the car struck him; that
he was still walking down the side, and was outside the
rail, when he was struck; that he thought that a car might
be along on the west track; that both cars were in the same
block when he got struck; that he did not know how far
he walked down before he was struck, nor whether it was
down as far as his father's house; that he did not look at
all for the car that was coming down, and that he did not
listen for it, nor pay any attention to it all; that he had
lived there two years, and knew he must not get in front of
a car, and that if he did he would get hurt; that he knew
all about that.

The plaintiff's sister, sitting in her father's house, testified
in corroboration of the plaintiff, and also to the effect that
the two cars passed right in front of the Horner building,
near the south end of the Club Saloon; that the plaintiff
was struck about in front of the barber shop; that the bell
was not rung immediately prior to his being struck; that
she did not hear the danger bell, and did not know that it
rang.    The only passenger on the car testified to the effect
that she could not say whether the bell rang or not; that
she did not remember of hearing the gong sound.  A witness
for the plaintiff testified to the effect that a car running
eighteen miles an hour could be stopped, by applying the
brake and shutting off the current, within forty or fifty feet,
and in less distance by reversing the current.   There is also
evidence to the effect that the defendant was authorized by
ordinance of the common council to run its cars at a speed
not exceeding twenty miles an hour.   B. A. Siggins, who
occupied the building immediately south of the Club Saloon,
testified to the effect that he saw the boy just getting up off
the ground a little north of the center of the barber shop,
and that the car had then stopped, and the hind end of it

was just a little way south of the barber shop and ten or fifteen feet from the boy, and the front end about thirty feet from him; that there were marks on the ground where the boy had slipped or slid along in the beer about ten feet.

The motorman on the car in question testified to the effect that he had been working for the defendant twenty months; that he rang the bell as usual in crossing over Clinton stret; sounded the gong with his foot all the way across that street; that after crossing it he stood erect, with his hand on the controller,— on the brake,— looking straight ahead down the track; that he passed the north-bound car sixty or seventy feet north of the place of the accident; that he saw the boy about the time of the accident; that when he first saw him he was in the street,— he thought about the south end of Siggins's store, but could not say how far away from the street-car track; probably six or eight feet from the gutter when he first saw him; that he was then running diagonally southeast towards his home, probably fifty feet from the car; that he cut his current and applied his brakes as soon as possible, and sounded his gong more than once; that when the car struck the plaintiff he had got his current off and was tightening his brake; that everything on his car was equipped in good condition; and that he was not running over twelve or thirteen miles an hour at the time. The conductor of the car, who at the time was standing on the rear platform facing the south, testified to the effect that the car was running at the time ten or twelve miles an hour; that the bell rang as they passed over Clinton street crossing, and while passing the north-bound car, just before the accident; that the first thing that attracted his attention at the point of the accident, or near and just before, was the sounding of the gong and the shutting off the current and applying the brakes; that when the car stopped it was ten or twelve feet away from the boy lying upon the ground; and that the car was twenty-eight or thirty feet long.

Such is a brief summary of the evidence. The substantial facts are practically undisputed. Three questions are suggested by the record.

1. Was the evidence sufficient to take the case to the jury on the question of the defendant's alleged negligence? The evidence that the bell was rung while crossing Clinton street and while passing the other car just north of the place of the accident is undisputed. The affirmative evidence that it was again rung after the motorman saw the boy, and before he was struck, establishes that as a fact in the case, and it is not overcome by the negative evidence in the record. The well-settled rule applies that "the positive testimony of one credible witness to a fact is entitled to more weight than that of several others who testify negatively, or, at most, to collateral circumstances merely persuasive in their character." *Wickham v. C. & N. W. R. Co.* 95 Wis. 25, 26, and cases there cited; *Sutton v. C., St. P., M. & O. R. Co.* 98 Wis. 161, 162. But the motorman admits that when he saw the boy his car was about fifty feet from him, and that the boy was then six or eight feet from the gutter, going southeasterly, diagonally towards the track. The boy testified that he was near the west track, and going directly south, until he turned to go east across the track, but he fails to state just how near he was to the track while going directly south. It stands admitted that the west rail of the west track was fifteen feet from the gutter; so, on the motorman's statement, the boy was from seven to nine feet from the west rail when he first saw him. Still, on his statement as to the direction the boy was going at the time, and his testimony as to the speed of the car, and the other evidence as to the place where the boy was struck, and as to the place where the car was stopped, and as to the place where the boy was found after the car was stopped, we think it was for the jury to say whether the motorman was at the time in the exercise of ordinary care.

2. The most important question in the case is whether the

plaintiff was guilty of contributory negligence. The boy frankly admits that he knew that the south-bound cars ran on the west track, but that he at no time looked north to see if any car was coming on that track, notwithstanding he was listening for a car from the north and thought that a car might be coming down on that track. In another part of his testimony he testified that he did not listen for a car coming down from the north nor pay any attention to it at all. Had he been an adult, no one, we presume, would hesitate to say that his conduct was simply reckless. The question recurs whether the plaintiff is relieved from such responsibility by reason of his tender years.

It seems to be settled that where, as here, it appears from the undisputed evidence that the plaintiff, considering his age and intelligence, did not exercise proper care in crossing the track, the trial court may determine, as a proposition of law, that the plaintiff is guilty of contributory negligence and cannot recover. *Ewen v. C. & N. W. R. Co.* 38 Wis. 614 (Syl., point 6). In that case the plaintiff was only eight years old. See *Strong v. Stevens Point,* 62 Wis. 255, 264, 265, where the boy was only eight years old. *Reed v. Madison,* 83 Wis. 176. In Massachusetts it has recently been held that an action for damages for the death of a boy eight years and one month old, by reason of the alleged negligence of the motorman, could not be maintained where it appeared "that the car could be seen for a considerable distance as it was approaching, and its sound could be plainly heard; that the boy's view was unobstructed; that the railway had but a single track, and the distance from the curbstone of the narrow sidewalk to the nearest rail was only about twelve feet; and that he ran rapidly from the walk to the track in front of the car, and no reason or excuse was disclosed for his so doing." *Morey v. Gloucester St. R. Co.* 171 Mass. 164. In New York it has been held that "a child between eight and nine years of age, who attempts to cross a city street

in the middle of a block, either without looking for an approaching street car, or in blind and heedless disregard of its rapid approach, is guilty of contributory negligence." *Weiss v. Metropolitan St. R. Co.* 33 App. Div. 221, and cases there cited. In a very recent case in New Jersey, "a boy nine and one half years of age, playing in a public street, ran across the track of a trolley road, and was struck and injured by a passing car. He testified that he neither saw nor heard the car. There was no obstacle to his seeing the car if he had looked before going on the track. Held, that a verdict in his favor cannot be supported." *Brady v. Consolidated T. Co.* 45 Atl. Rep. 805. A similar rule has been applied in that state to a girl nine years old, injured while attempting to cross a street-railway track. *Fitzhenry v. Consolidated T. Co.* 46 Atl. Rep. 698. So it has been held in Pennsylvania that, "in an action against a street-railway company to recover damages for the death of a boy twelve years old, a nonsuit is properly entered where the evidence shows that the deceased, while playing with other boys upon the street at the time of the accident, ran upon one of the railway tracks without paying any attention to the approach of a car, a few feet away, and then, hearing a shout from some companions, stopped, looked in the wrong direction, and was struck by the car." *Pletcher v. Scranton T. Co.* 185 Pa. St. 147.

In the case at bar the plaintiff had attended school for three years and was at the time in the third grade of the ward school, and it appears from his testimony that he is a boy of unusual intelligence. He had lived right opposite the place of the accident for two years, and was in the habit of daily crossing the tracks to attend school, and saw the car, just before, pass north on the east track, and knew that south-bound cars ran on the west track. There was nothing to prevent him from seeing it nor to divert his attention. He knew all about the situation. The very object of double

Ryan vs. La Crosse City R. Co.

tracks was to allow the cars to pass at any place. Upon the evidence in the record and the adjudications cited, and numerous others in the same line which might be cited, we must hold that the plaintiff was, notwithstanding his age, guilty of contributory negligence.

3. This being so, the judgment cannot be sustained, unless we can say from the record that the motorman was guilty of gross negligence. To constitute such negligence the facts must show such a degree of rashness or wantonness on the part of the motorman as evinces a total want of care for the safety of the plaintiff. *Lockwood v. Belle City St. R. Co.* 92 Wis. 111–113, and cases there cited; *Schug v. C., M. & St. P. R. Co.* 102 Wis. 520–523. But there is nothing in the record to indicate that the motorman was guilty of any such rashness or wantonness. He had just passed a car. He was in the middle of a block, where pedestrians were not ordinarily expected to be. The boy, when he first saw him, according to his statement, was from seven to nine feet from the track. He certainly made an effort to stop the car, and there is nothing to show that he intended to run the boy down, nor to indicate that his conduct was reckless, rash, or wanton.

*By the Court.*— The judgment of the circuit court is reversed, and the cause is remanded for a new trial.

Dodge, J. While I concur in the conclusion reached by the court that the evidence tends to establish negligence on the part of the motorman, and that it does not tend to establish gross negligence, I am unable to concur in the view that the conduct of the injured boy can properly be declared negligence in law. For the purpose of defining my view on this question, I think certain facts, to establish which there is at least some evidence, should be added to those stated in the opinion filed on behalf of the court, or more emphasized. The boy, eight years and nine months of age,

had been sent across these railroad tracks on a hurried errand for some beer for supper, just as the family were about ready to sit down to the table. He therefore was unquestionably impressed by the necessity of haste in returning. As he started on his return he observed a car coming from the south, in such proximity that he deemed it unsafe to attempt to cross ahead of it, and proceeded in the general direction of his home, down the street, with his attention fixed on this car, waiting for it to pass him. The evidence is in conflict as to whether he walked close to the west track or some six or seven feet away from it. According to his testimony, he walked near it, and was struck just as he started across it, after the north-bound car had passed him. According to the motorman's testimony, he had turned some six or seven feet away from the track, and was coming on a line almost at right angles to it. This conduct would, of course, have made the presence of the car almost certainly apparent to him, unless he had industriously refrained from taking note of what was in plain sight. The situation in which he places himself, that of walking near the track and having just commenced to cross it, would not bring the car within his vision, and the proximity of the north-bound car would account for his failure to hear the sound of it. His attention was fastened upon the north-bound car, which he had judged to imperil an earlier crossing, and he gave no thought to a south-bound car, having, as he testified, never known of cars passing each other in that block. Upon this subject the testimony of the railroad employees is that the regular and customary place of passing was about three blocks north, but that it was by no means infrequent that cars were thrown out of their time so that they passed within the block in question.

The rule asserted in many courts, that no set of facts could justify a court in holding conduct of a child of tender years negligent as matter of law, though a jury might find it so

as a fact, while fully conceding the power and duty of the
same court to declare acts of an adult so clearly negligent
as to leave no question of fact for the jury, has never seemed
to me entirely logical or consistent. But the law is what
the courts of last resort have decided it to be, and the rule
of law above stated is too well settled in this state to be
questioned by reason of the opinion of any individual as to
its soundness as *res integra.* Applying that rule, this court
has never yet held that any conduct on the part of so young
a child as *William Ryan* could properly be declared contrib-
utory negligence as a matter of law. In *Lofdahl v. M., St.
P. & S. S. M. R. Co.* 88 Wis. 421, a boy sixteen years old,
wholly familiar with the movement of trains in the locality
in question, was held to be negligent in law; but in *Johnson
v. C. & N. W. R. Co.* 49 Wis. 529; *S. C.* 56 Wis. 274, a boy
six years and nine months old was said to be too young to
be guilty of contributory negligence as a matter of law. In
*McVoy v. Oakes,* 91 Wis. 214, the same thing was said of a
boy seven years old; and in *Carmer v. C., St. P., M. & O. R.
Co.* 95 Wis. 513, it was said, on authority of the last-men-
tioned case, that a boy eight and a half years old was cer-
tainly not guilty, as a matter of law, of contributory negli-
gence for climbing through a freight train, although the
same conduct by an adult would have been held negligence
by the court. It was there also said that, generally speak-
ing, the question of a child's due care is for the jury. Thus,
it has apparently been determined by this court that it can-
not be said, as matter of law, that conduct on the part of a
child either six, seven, or eight and a half years old is con-
tributory negligence. Just where the line falls between
that age and sixteen when it ceases to be exclusively for the
jury and may be clear enough to be passed upon by the
court, has heretofore been undetermined. In 1 Shearm. &
Redf. Neg. (5th ed.), 112, it is said that the question of the
power and duty of any child between three and twelve
years to exercise care for its protection is held to be for the

jury.   All of the previous decisions of this court are consist-
ent with that statement.   Thus, in the following cases the
question was held to have been properly one for the jury and
the conduct of the trial court in submitting it met the approval
of this court: *Ewen v. C. & N. W. R. Co.* 38 Wis. 628, where
a nine-year-old boy started to run across railroad tracks,
and stopped on the track, when a train was approaching
close at hand and ran over him; *Hemmingway v. C., M. &
St. P. R. Co.* 72 Wis. 49, where an eleven-year-old boy jumped
from a moving train as it was passing his station; *Whalen
v. C. & N. W. R. Co.* 75 Wis. 654, 663, where a thirteen-
year-old boy walked 100 feet on a railway track in plain
sight of an approaching train but did not observe it.   It
was said: "Had he been an adult, we should be strongly in-
clined to hold that contributory negligence on his part was
conclusively proved.   But he was not an adult.   He was a
little less than thirteen years old.   Under well-settled rules
of law, the court properly submitted to the jury the question
of the degree of diligence required of him."   These are the
principal cases in our own court in which the question of
juvenile negligence has been discussed, and they seem to
sustain two propositions: The one above stated, that with
very young children the question must always be for the
jury, unless, indeed, they are so young that the court must
say they could not, under any circumstances, be chargeable
with negligence; and, secondly, that above that age it is
generally a jury question, and the circumstances must be
very exceptional which justify the court in assuming to de-
cide the question.   Under the law as established in this state
it seems to me certain that no court can properly hold that
any conduct by a boy of the age of this one is negligence
*per se* and as matter of law, but that the question must
always be open to difference of opinion, so that it must be
submitted for the unanimous decision of a jury of ordi-
nary citizens.

Passing this consideration, and conceding the possibility

of conduct of an eight-year-old boy being so clearly negligent
as to justify withdrawal of the question from the jury, I can-
not concur in the view that the evidence in the present case
is so certain, free from conflict, and unambiguous, and that
the conduct disclosed is so clearly more negligent than could
be expected of the great mass of children of his age and in-
telligence under like circumstances, that reasonable minds
might not differ thereon.    The evidence has been subjected
to the scrutiny of the trial judge, who, having superior facil-
ities for observing and understanding the witnesses, includ-
ing the boy himself, has decided that his conduct was not so
clearly negligent that ordinary minds could not honestly
differ upon that question, and a jury of twelve men have
unanimously decided that it was not negligent.  The ques-
tion, as in all cases of negligence, is, What care do the great
mass of children of similar age and intelligence, familiar
with street cars and tracks, ordinarily exercise under cir-
cumstances like those here presented ?   This question is one
upon which it is peculiarly unsafe for an adult mind to at-
tempt to be dogmatic.    Multitudinous considerations are in-
volved in juvenile conduct which could not reasonably be
expected of an adult: appreciation of only part of the sur-
rounding circumstances, mistakes in judgment, inconsider-
ate or hasty decision and action,— all are to be expected of
the infant.    If the childish mind of this boy,— burdened by
his duty of haste to return to the family supper table, and
perhaps by peril of punishment for delay, engrossed by
thoughts of avoiding the danger from the north-bound car
which he observed,— was momentarily diverted from the
peril of a car coming upon him from the north, may not
reasonable minds differ as to whether that is so unusual
among children of his age that he must be charged with
negligence in law?   It seems to me they well may, inde-
pendently of the fact that minds, presumably reasonable,
have differed, and the majority thereof reached a conclusion
contrary to that embodied in the decision of the court.

Kyes vs. St. Croix Co. and others.

WINSLOW, J.   I concur in the views expressed by Mr. Justice DODGE.

Upon a motion for rehearing counsel for respondent contended, *inter alia*, that even if the boy was negligent that fact did not justify the motorman in running over him, when, as the evidence shows, he had ample time to stop.   A verdict should be directed only in those cases in which it conclusively appears that the child ran so quickly in front of the car that the motorman had no ground to apprehend such action; and all the cases cited by the court are of that nature.   *Rooks v. Houston, W. S. & P. F. R. Co.* 10 App. Div. 98; *Louisville R. Co. v. Blaydes,* 51 S. W. Rep. 820; *Gutierrez v. Laredo E. & R. Co.* 45 S. W. Rep. 310; *Geoghegan v. Third Ave. R. Co.* 51 App. Div. 369; *Baltimore City P. R. Co. v. Cooney,* 87 Md. 261; *Tarler v. Metropolitan St. R. Co.* 21 Misc. (N. Y.), 684; *Montgomery v. Lansing City E. R. Co.* 103 Mich. 46; *Baltimore C. R. Co. v. Rifcowitz,* 89 Md. 338; *Weitzman v. Nassau E. R. Co.* 33 App. Div. 585.   The motion was denied November 16, 1900.