[Sac. No. 4580. In Bank.—February 10, 1932.]

MARY ALICE KASTEL (a Minor, etc.), Respondent, v. MRS. JOHN L. STIEBER et al., Defendants; EDITH M. SWAN, Appellant.

Ernest T. Hall, George A. Work, Roy A. Bronson and Bronson, Bronson & Slaven for Appellant.

Downey & Chester, Sheridan Downey and Theodore W. Chester for Respondent.

THE COURT.—A hearing was granted in this case after decision by the District Court of Appeal, Third Appellate District, affirming the judgment of the trial court. The opinion of said District Court of Appeal, delivered by Mr. Justice Plummer, held that the plaintiff herein was entitled to recover damages for personal injuries sustained in an automobile accident by reason of defendants' negligence,

although plaintiff was riding in defendants' automobile at the time. The court based its holding upon two grounds: First, that plaintiff did not voluntarily accept the ride, and was not, therefore, a guest within the meaning of the California Vehicle Act, section 141¾; second, that the negligence of the defendants was gross, and consequently permitted recovery in spite of said statute, because of the exceptions stated therein. In reaching its conclusion on this second ground, said District Court of Appeal modified a finding of the trial court to the effect that the negligence was not gross. We think that the facts as they appear in the record justified such modification, and fully support the judgment on that ground. It is therefore unnecessary to consider the question whether plaintiff was a guest within the meaning of the statute.

In accordance with this view, we adopt part of the opinion of the District Court of Appeal as the opinion of this court, as follows:

"The plaintiff had judgment against the defendant Edith M. Swan for and on account of personal injuries sustained in an automobile accident which occurred in the city of Sacramento, on the 10th day of October, 1929. From this judgment the defendant appeals.

"It is not claimed in this action that the damages awarded are excessive. The only issue tendered is that under the provisions of section 141¾ of the California Vehicle Act of 1929, the plaintiff is not entitled to any judgment.

"The record shows that Mary Alice Kastel was a minor of the age of 8 years, and for some 4 years preceding the 10th day of October, 1929, had been living with her aunt in Longview, Washington. The father of said minor was deceased; the mother had married again, but was furnishing for the support of said Mary Alice Kastel the sum of about $20 per month, had never surrendered her legal right to the control and custody of said minor, and in the language of the findings, retained the 'say-so' as to said minor.

"A short time prior to the 10th day of October, 1929, the appellant, Edith M. Swan, conceived the idea of driving to Riverside, in the state of California, and invited Mrs. John L. Stieber to accompany her, and to take the plaintiff along. The plaintiff having suffered a minor injury in an automobile accident that had occurred previous to this proposed

trip, strenuously objected to riding in the automobile, but was compelled by the defendants to accompany them on the proposed journey, the record showing that the plaintiff wished to remain with Mr. Stieber in Longview, or make the journey by train, and protested so strenuously that when the defendant started from Longview, Washington, it was necessary for the defendant, Edith M. Swan, to hold the plaintiff in the automobile which the parties were using in starting on their trip.

"The record further shows that the two defendants alternated in driving the car, and in making the journey from Longview to Sacramento, drove at a very high rate of speed; that after reaching Sacramento they resumed their journey southward at about 1 o'clock in the afternoon, and proposed making the city of Fresno in time to have their hair dressed and attend a theater at the latter city. As the defendants were leaving the city of Sacramento by way of Stockton boulevard, the accident occurred which led to the injury of the plaintiff. It appears that the defendant Stieber was at the wheel, and that the automobile, along the section of the boulevard designated as a business section, and where the signs limited the speed to 15 miles an hour, was being driven at the rate of about 25 miles an hour; that as defendants approached what counsel admit to be a residential section or a section where the speed limit is 20 miles an hour, the speed of the car was considerably accelerated. An eye-witness who saw the car after it had speeded up and witnessed the accident to which we shall refer, testified that the car was moving at the rate of 40 miles an hour, or more. The defendant Stieber testified that at the request of the defendant Swan, she speeded up the car. This speeding up took place after driving at the rate of 25 miles per hour, as heretofore stated. This witness, however, testified that she did not think she was going 40 miles an hour at the time of the accident, but did not know how fast she was going. The eye-witness to whom we have referred was a motorman in charge of a street car at the time of the accident, and testified that he saw the car coming from a distance of about a block away. The scene of the accident may be described as follows: Stockton boulevard is a paved highway leading out of the city of Sacramento in a southerly direction. Along the east side of the boulevard are street-car tracks

belonging to the P. G. and E. Company. These street-car tracks, after extending along the easterly side of the boulevard, upon reaching Fourth avenue, make a right-hand turn to the west, crossing the boulevard and extending on toward the main portion of the city of Sacramento. At the time of the accident a street car was moving slowly southward preparatory to crossing the boulevard. As it reached the track of what is known as and called the 'California Traction Company's' lines, which likewise extend along the easterly side of the boulevard, the street car stopped. The driver of the automobile, the defendant Stieber, observing the motion of the street car, according to her testimony, turned to the right to avoid striking the street car, apparently not noticing that the street car had come to a complete stop. In so turning the automobile to the right, Mrs. Stieber drove the car across the right curbing of the boulevard and struck a trolley-pole 18 inches in thickness, breaking the pole in two and throwing the plaintiff through the windshield onto the pavement, injuring her severely. The map introduced in evidence showing the scene of the accident discloses that the automobile driven by the defendants might very readily have been turned westward on Fourth avenue, if such had been necessary to avoid colliding with the street car. Mrs. Stieber testified that she did not see the trolley-pole against which she drove the speeding automobile.

"This recital shows that the automobile in which the defendants were riding was being driven at a very high rate of speed within the corporate limits of the city of Sacramento, past intersecting streets, and we may here add that the testimony shows that the defendants had passed a few cars on their way southward, as well as passing the intersecting streets, at a speed greatly in excess of that permitted by the California Vehicle Act. So far as the record shows, it does not appear that the defendants made any effort whatever to stop the progress of the car, but maintained the same high rate of speed until striking the trolley-pole. The pole in question was a few feet west of the west curb of the boulevard.

"The action was tried by the court sitting without a jury, and from the findings of fact made by the court, we make the following summary: That at the time and place the said Mary Alice Kastel was being driven by the defendants in

said automobile, Mary Alice Kastel had not accepted a ride therein from both or either of said defendants, was not in said automobile of her own volition, but was riding therein entirely under the direction, dominion and control of the defendants. That after the death of the father of Mary Alice Kastel, the defendant Stieber undertook, on her part, to take care of and support the said Mary Alice Kastel; that the mother of said Mary Alice Kastel agreed to pay said Stieber, for the support of Mary Alice Kastel, the sum of $20 per month, and set apart the income from a certain residence in the state of Minnesota for such purpose; that the income from said house had averaged $20 per month, and had been paid to said Mrs. Stieber by the mother of said Mary Alice Kastel; that during all of the period which we have heretofore mentioned, Mary Alice Kastel had lived with the said Mrs. John L. Stieber; that Mrs. Stieber had made arrangements for her schooling, and during said time stood in the place of a parent to said Mary Alice Kastel; that said Mary Alice Kastel had always been afraid to ride in an automobile; that this fear was increased by reason of a prior minor automobile accident occurring to the automobile in which she was then riding; that Mary Alice Kastel wanted to stay at Longview with the husband of Mrs. Stieber instead of going to Riverside, but stated that if she went to Riverside she wanted to go by train; that said minor entered said automobile of the defendants at the command and under the direction of said Mrs. John L. Stieber, and after she was put in said automobile, tried to get out; that at the time of the accident, Mary Alice Kastel was being transported from Longview, in the state of Washington, to Riverside, in the state of California, for the benefit of said minor's health; that said minor entered said automobile unwillingly; that because of the age and dependence of said Mary Alice Kastel she did not and could not accept a ride in said automobile; that at said time, the mother of Mary Alice Kastel retained the 'say-so' as to said minor; that prior to the taking of said Mary Alice Kastel from the state of Washington on the proposed trip, the mother of said Mary Alice Kastel told Mrs. John L. Stieber that Mary Alice Kastel would be all right in Washington; that said Mrs. Stieber did not obtain the consent of the mother of Mary Alice Kastel to bring her to the state of California,

and did not tell the mother of said minor that they were going to California; that said Mrs. John L. Stieber was at all times riding as a guest of Edith M. Swan, in said automobile, and that the said Mary Alice Kastel, at the time of the accident, was an involuntary guest riding therein.

"The court further found, 'that at the time and place mentioned in said complaint, the defendants so negligently and carelessly operated said automobile that they caused said automobile to collide with the trolley-pole at the northwest corner of the intersection of Stockton boulevard and Fourth avenue, in the city of Sacramento, California; that the negligence of said defendants was not gross'. Findings were then made as to the injuries suffered by the plaintiff, damages awarded and judgment entered against the defendant Edith M. Swan. Judgment was not entered against the defendant Stieber, for the reason that the court concluded as follows: 'That defendant Mrs. John L. Stieber stood *in loco parentis* to the said minor at the time of said accident. . . . '

"There being no substantial conflict in the testimony as to the manner in which the automobile was being driven at the time of its collision with the trolley-pole, should the findings of the trial court be amended so as to characterize the acts of the defendants as gross negligence? Many cases have been cited by the appellant in support of the contention that findings of the court cannot be amended by an appellate tribunal; however, all of the cases holding that appellate courts have no power in this respect, were decided prior to the adoption of section 956a of the Code of Civil Procedure, and no longer state the correct rule. The precise question argued by the appellant came before this court and was decided in the case of *Burch* v. *Hartford Fire Ins. Co.*, 85 Cal. App. 542 [259 Pac. 1108]. This court there said: 'Under section 956a of the Code of Civil Procedure the appellate court, in a case where a trial by jury has been waived, may order that certain findings and conclusions of law be amended, and enter judgment in accordance with the evidence which is without conflict on any material point, and terminate the cause without further litigation.'

"In the recent case of *Le Blond* v. *Townsley*, 108 Cal. App. 81 [290 Pac. 1051], where the trial court had failed to make the necessary findings to support the judgment, the District Court of Appeal of the Fourth District used the fol-

lowing language: 'This court, therefore, finds that the allegations of the affirmative defense of the answer charging the plaintiff with contributory negligence, are untrue. With this addition to the findings, the judgment is affirmed.'

"In *Kirk* v. *Culley*, 202 Cal. 501 [261 Pac. 994], the Supreme Court, speaking of the amendment to the Constitution, and also the adoption of section 956a of the Code of Civil Procedure, said: 'It was intended to broaden the powers of the Supreme Court and the District Courts of Appeal in the disposition of appeals in cases where a jury trial does not exist as a matter of right, or where, if the right does exist, it has been waived; and thus, courts are expressly authorized to make findings of fact contrary to, or in addition to, those made by the trial court, either upon the evidence heard in the trial court, or in the appellate court,' etc. The court then proceeded to make additional findings.

"In the recent case of *Tupman* v. *Haberkern*, 208 Cal. 256 [280 Pac. 970, 974], the Supreme Court, after a full and careful review of the power conferred upon appellate courts by section 4¾ of article VI of the Constitution, and section 956a of the Code of Civil Procedure, thus points out the rule to be followed: 'In the light of the history of the constitutional amendment and the phraseology of the legislation adopted pursuant thereto, and having in contemplation the evils or defects in practice and procedure thus attempted to be remedied, we perceive the primary and principal purpose of the change in the law to be that, whenever possible, and the interests of justice would seem to require, the reviewing court should have the power to make new findings contrary to or in addition to those made by the trial court, either on the record presented or on new evidence to be taken under the direction of the court, all with reference to material issues framed by the pleadings, to the end that the judgment or order appealed from may be affirmed and further litigation terminated, and where otherwise under the old practice the judgment or order would have to be reversed.'

"It necessarily follows from these decisions that where there is no substantial conflict in the testimony, and the appellate court is of the opinion that the testimony warrants a different finding, and such finding is material in support of the judgment rendered, it is the duty of the

appellate court to make such finding or to amend the finding of the trial court.

■ "Does the testimony warrant a finding of gross negligence? It is admitted by the appellant that the automobile was being driven in excess of the legal limit. The testimony of the motorman, who witnessed the approach of the speeding car, was to the effect that the automobile was traveling at the rate of 40 miles per hour. The driver of the car stated that she did not know how fast she was driving, but did not think she was driving 40 miles an hour. The evidence shows, however, that after she had been driving 25 miles an hour, she was directed to and did speed up the momentum of the automobile. There is one physical fact which indicates almost incontrovertibly that the testimony of the motorman was absolutely correct. The speeding automobile passed over the curbing on the west side of the boulevard, struck and broke in two a trolley-pole which was 18 inches in thickness. This of itself, we think, is strong corroborative testimony if not an absolute demonstration of the correctness of the testimony of the motorman. During all the time the automobile was being driven upon Stockton boulevard, it was passing intersecting streets. It is true the testimony does not show that it passed any cars between Third and Fourth avenues, but it was speeding past intersecting streets, as we have stated, and along the side of the street car track, upon which a street car was moving slowly was plainly visible. That it is extremely hazardous to propel an automobile at a speed beyond the legal limit, and approaching the speed testified to in this case, past intersecting streets, within the corporate and built-up limits of a city, we think is beyond question. In this case the speeding was an intentional act. That such speeding on the streets of a city can only be done without regard to the rights or safety of persons and property who may at any time be expected to use the same streets, or coming thereon from intersecting streets, seems to us likewise beyond contradiction. There was nothing to prevent the occupants of the automobile in question from seeing the trolley-pole with which the automobile collided. We are unalterably of the conclusion that no private automobile, and no automobile not excepted by the terms of the Vehicle Act can be propelled upon built-up streets within the corporate limits of

any city where there are intersecting streets, at a speed of 40 miles per hour, or at a speed approaching that excessiveness, without an indifference as to the rights and safety of others who may have occasion to use the same, and therefore, with a greater or less indifference to the safety of the persons riding in the automobile so being driven along the streets of a city.

"That the defendants were violating a statute of the state stands admitted; therefore, the language of the Supreme Court in *Benjamin* v. *Noonan*, 207 Cal. 279 [277 Pac. 1045, 1046], is pertinent, to-wit: 'While it is undoubtedly correct to say that the act of driving a vehicle over a street or public highway beyond the speed limit established by a municipal ordinance or a statute merely constitutes evidence of negligence in cases where damages has followed the infraction of such an ordinance or law, the rule in this state is, however, that it is conclusive evidence of negligence (citing cases). Therefore, the statement that such an act is "of itself negligence", or "negligence as a matter of law" or "negligence *per se*" (equivalent expressions) is, in this state, strictly correct.' (Citing a number of authorities.)

"In 45 C. J., page 678, the rule is thus stated: 'Violation of a statute or ordinance does not of itself constitute wilfulness or wantonness, but it may be considered as a circumstance tending to show that the act or omission in question was wilful or wanton, as being entirely regardless of the law and the safety of others.' In this state gross negligence does not involve the elements of either wilfulness or wantonness. If the intent to do the act constituting negligence is present, it is not necessary that it be wilful or wanton in order to conclude that the circumstances surrounding the performance of the act establish gross negligence.

"In the recent case of *Malone et al.* v. *Clemow et al.*, 111 Cal. App. 13 [295 Pac. 70, 71], we find the meaning of the words 'gross negligence' considered. It is there said: 'Gross negligence has been defined to be the want of slight diligence'. (*Redington* v. *Pacific Postal Telegraph Cable Co.*, 107 Cal. 317 [48 Am. St. Rep. 132, 40 Pac. 432, 434]; *Walther* v. *Southern Pac. Co.*, 159 Cal. 775 [37 L. R. A. (N. S.) 235, 116 Pac. 51]; Shearman & Redfield on Negligence, sec. 49; *Krause* v. *Rarity et al.*, 210 Cal. 644 [77

A. L. R. 1327, 293 Pac. 62, 66]; *Coit* v. *Western Union Tel. Co.,* 130 Cal. 657 [80 Am. St. Rep. 153, 53 L. R. A. 678, 63 Pac. 83]; *Helme* v. *Great Western Milling Co.,* 43 Cal. App. 416 [185 Pac. 510, 512]; 19 Cal. Jur. 554.) In the recent case of *Krause* v. *Rarity, supra,* the Supreme Court, in considering the meaning of the phrase 'gross negligence', as used in section 141¾ of the California Vehicle Act, said: 'In many jurisdictions the division of negligence into degrees is not countenanced (20 R. C. L. 21), the concept being that such phrases as "gross negligence" and "slight negligence" ·are misnomers. In this state the degrees of negligence have been frequently recognized. The term "gross negligence" has been defined as "the want of slight diligence", as "an entire failure to exercise care, or the exercise of so slight a degree of care as to justify the belief that there was an indifference to the things and welfare of others", and as "that want of care which would raise a presumption of the conscious indifference to consequences".' We should not confuse 'gross negligence' with 'wilful misconduct', because there is a clear distinction between the two terms. In *Helme* v. *Great Western Milling Co., supra,* the court said: ' "Wilful misconduct" means something different from and more than negligence, however gross. . . . The mere failure to perform a statutory duty is not, alone, wilful misconduct. . . . To constitute "wilful misconduct" there must be actual knowledge, or that which in the law is esteemed to be the equivalent to actual knowledge, of the peril to be apprehended from the failure to act, coupled with a conscious failure to act to the end of averting injury. (See, also, *Tognazzino* v. *Freeman,* 18 Cal. App. 468 [123 Pac. 540]; *Eylenfeldt* v. *United Railroads of San Francisco,* 28 Cal. App. 56 [151 Pac. 293]; *Figlietti* v. *Frick,* 203 Cal. 246 [263 Pac. 534].) Appellants argue that some act of wilfulness and wantonness must be shown to constitute gross negligence; or, in other words, that either wilfulness or wantonness is a necessary element of gross negligence. It is clear from the foregoing authorities that this is not correct, for whenever the element of knowledge and wilfulness enters into the act, it ceases to be negligence, and becomes at least "wilful misconduct", and this is true no matter what degree of negligence is being considered.' In the Clemow case the record shows that the driver of the automobile was pro-

ceeding along one of the streets of Berkeley, upon a clear night, where the streets were artificially lighted, so that an object on the street was clearly distinct at a distance of 200 feet or more; that the course of the automobile was not obstructed by any other automobile; and that the automobile was driven into the rear of a parked truck upon which there was a red light; that the automobile had been traveling for several blocks at a speed of from 30 to 35 miles per hour. No explanation was offered why she did not see the parked truck and its tail-light until within about 12 feet distant therefrom. The court held that the facts established gross negligence. In the instant case the driver of the automobile simply said that she did not see the trolley-pole. In the Clemow case just cited the automobile was being driven at a speed of from 30 to 35 miles per hour, which of course was negligence *per se*, being contrary to the California Vehicle Act. Under the facts of the case of *Malone* v. *Clemow, supra,* and the law there announced, we think the facts in the instant case demanded a like finding on the part of the trial court.

"The appellant relies upon a number of Washington cases where the subject of gross negligence has been considered. The Supreme Court of Washington, in its definition of 'gross negligence', follows the definition given by the Supreme Court of Wisconsin, which differs very materially from the definition adopted by the courts of this state.

"In *Bentson, Administrator, etc.,* v. *Brown,* 186 Wis. 629 [38 A. L. R. 1417, 203 N. W. 380], we find that Wisconsin holds gross negligence to be defined as follows: 'It is the settled law of this state that in order to constitute gross negligence, there must be either a wilful intent to injure, or that reckless and wanton disregard of the rights and safety of another, or of his property, and that willingness to inflict injury which the law deems equivalent to an intent to injure.' This definition is supported by a number of authorities. In that case the driver of an automobile drove past a schoolhouse just as the pupils were emerging therefrom. The rate of speed of the automobile was about 20 miles per hour. A boy dashing suddenly in front of the automobile was stricken down. It was held by the trial court that gross negligence was not shown. Even in that case there was a dissenting opinion based upon the fact that

the legal limit was exceeded by the driver of the automobile. One sentence is to some extent pertinent here. It is: 'The act of the defendant in driving at an unlawful rate of speed, by school grounds, was intentional, wilful, utterly reckless, and in disregard of human life.' If we eliminate the reference to 'wilfulness' and 'utter recklessness', the quotation would be strictly applicable, as the rate of speed in the instant case was intentional, and as we have shown, also in disregard of the rights of others who might be expected to emerge from the intersecting streets.

"In the recent case of *Craig* v. *McAtee et al.*, 160 Wash. 337 [295 Pac. 146], we find the Supreme Court of Washington approving the definition of gross negligence announced by the Supreme Court of Wisconsin, to-wit: 'Gross negligence has been defined to be the want of even slight care.' (*Saxe* v. *Terry*, 140 Wash. 503 [250 Pac. 27]; *Blood* v. *Austin*, 149 Wash. 41 [270 Pac. 103].) The supreme court of Wisconsin, in the case of *Bentson* v. *Brown*, 186 Wis. 629 [38 A. L. R. 1417, 203 N. W. 380], refers to its definition of gross negligence, as 'such a degree of rashness or wantonness as evinces a total want of care for the safety of others'. (Citing *Ryan* v. *LaCrosse City R. Co.*, 108 Wis. 122 [83 N. W. 770].) And again, as 'reckless and wanton disregard of the rights and safety of another, or of his property, and that willingness to inflict injury which the law deems equivalent to an intent to injure', etc. As repeatedly stated by our own courts, the element of wantonness, rashness and recklessness do not enter into the definition of gross negligence.

"Following the definition which we have just stated, the Supreme Court of Washington, in the case of *Dailey* v. *Phoenix Investment Co. et al.*, 155 Wash. 597 [285 Pac. 657, 658], held that the following facts did not constitute gross negligence: After stating that a party by the name of Twohy was driving, the opinion goes on to state: 'The road to the city, at least for a considerable distance from the clubhouse, was an ordinary gravel road about 20 feet in width. A short distance from the clubhouse the road became what is referred to in the testimony as the "straight-away", of about three-quarters of a mile to a mile in length. At approximately the end of this "straight-away" another road crossed at right angles the road upon which the parties

hereto were proceeding. The right angle turn, however, had been done away with by a curve, which left an unim-proved triangular space between the old right angle turn and the new curve which formed a connection between the road upon which the parties were driving and the crossroad. In this space, which is referred to in the testimony as "the triangle", there stood a telephone pole, and also some large rocks, or boulders, which had been thrown into the "tri-angle", that area being a little below the surface of the road. Testimony introduced by appellant tended to show that there was considerable loose gravel on the road at and near the curve; the gravel being thicker on the right-hand portion of the road, facing toward Yakima, than in the middle thereof. As the automobile entered upon the "straight-away", it attained a speed of approximately 40 miles an hour, and appellant signalled to a couple of cars ahead of him, in which were riding persons who had also been to the dance, that he desired to pass them. This was safely accomplished, and the car continued on its way. As the car entered upon the curve in the road above referred to, it left the roadbed and collided with some of the debris in the "triangle", the shock throwing respondent from the car and inflicting upon her the injuries of which she complains.'

"Following the same rule, the Supreme Court of Washington, in *Blood* v. *Austin*, 149 Wash. 41 [270 Pac. 103, 104], held that the following facts did not constitute gross negligence: 'Mrs. Blood testified that during the first twenty miles on the return trip, the respondent was cautioned several times by the others in the car, about driving too fast. That he was thus cautioned was denied by him and his wife. In this respect, however, as well as others, we accept the testimony most favorable to the appellant. The weather was cold, below freezing, and appellant testified that the respondent drove rather fast by spurts. About two miles further on, the accident happened, on a right-hand curve in the highway. All along, the road was in good condition; it was a gravel road, the traveled portion being 20 feet wide. Two hundred and fifty feet from the curve there was the usual caution sign of "Curve, 250 feet." Appellant testified that the respondent started to speed up about 100 to 200 feet from the sign, at which time his speed was estimated at 30 to 40 miles an hour, at which time her husband asked him to

go slow. The curve was about 75 to 100 feet in length, around a hillside on the right. The car ran against a railing on the left, which gave way about the center of the curve, causing the car to topple down an embankment, resulting in the death of Blood. Upon approaching the curve, and within it, the right-hand side of the road had chuckholes or ice-pockets, as they were called by different witnesses, and in taking the curve, the car was driven along the center of the roadway. The roadway was frozen and covered with loose, round gravel or rocks, as different witnesses described it, similar to the situation in the case of *Saxe* v. *Terry*, 140 Wash. 503 [250 Pac. 27], causing a lateral skidding or sliding on the pebbles of the wheels of the car to the left, until the railing was struck. Upon examination it was found that the posts supporting the railing were rotten. There was no other traffic in the vicinity at that time.'

"The same rule is followed in *Hyman* v. *Kloizner*, 139 Wash. 655 [247 Pac. 1034], the facts of which need not be recited, but which show that the court had in view that gross negligence included an idea of the heedless and reckless disregard of the rights of others, merging upon wantonness and wilfulness.

"In the case of *Adair* v. *Newkirk*, 148 Wash. 165 [268 Pac. 153, 154], the Supreme Court of Washington held an act of an automobile driver, when turning out to pass a car traveling in the same direction, misjudging the distance of an approaching car and causing a collision, to be gross negligence. A portion of the opinion in that case, somewhat approaching the facts in the case at bar, shows facts constituting gross negligence: 'Newkirk, while admitting that he overtook and passed a car going 30 or 35 miles per hour, that he attained a speed of at least 40 miles an hour in doing so, and that he saw the lights of an approaching car at all times, seeks to justify his acts, by his own testimony, to the effect that the lights on the approaching car were dim and yellowish, and he was thereby misled as to its nearness, and was guilty, therefore, only of an error of judgment. There was little, if any, corroboration of his testimony in this respect, and the trial court found against him on the facts. That finding being well supported by a preponderance of the testimony, we are content to adopt it, and with

it the conclusion that Newkirk was guilty of gross negligence. In so concluding we have in mind what was said in *Hyman* v. *Kloizner, supra,* to the effect that varying degrees of negligence or of required care cannot be differentiated with any sort of precision. The difference is not in principle, but in degree only. Therefore, where, as here, there is shown that no care whatever was exercised in a situation obviously involving great danger, the conclusion of gross negligence follows.'

''The Washington cases, as to their facts, are further distinguished from the circumstances surrounding the instant case in that the Washington cases all took place on the open highway, and it is not stated in any of them that the speed law was being violated, while in the instant case, the facts relate to circumstances which took place within the limits of an incorporated city, where the speeding automobile was passing intersecting streets at approximately twice the legal limit.

''In *Pepper* v. *Morrill,* 24 Fed. (2d) 320, 321 [57 A. L. R. 750], the United States Circuit Court of Appeals for the First District held the following facts, which are in many respects similar to the facts in the instant case, sufficient to establish gross negligence: One of the witnesses testified that the car was speeding along at about 50 miles per hour; that the driver had been warned not to drive so rapidly; that once or twice he had gone around a curve so as to give the automobile the sensation of tipping over. The accident occurred at the fork of two roads. We take from the opinion the following: 'At the fork in the road there was a wooden fence and two or three lamp-posts. As the defendant attempted to turn to the left from the Ware road, the right-hand side of the car collided with the fence and one of the lamp-posts, breaking down both, and bringing up against a telegraph pole, which was pushed to one side but not broken off. The plaintiff's husband was instantly killed, she was seriously injured, and the defendant was rendered unconscious. A member of the State Constabulary, who was doing police duty in the vicinity of the accident, proceeded there immediately after it occurred, and testified that there was a hill just before reaching the scene of the accident from West Brookfield; ''that the hill was straight about

halfway down, and a curve started to the left about halfway down to the bottom; . . . that there is a fork in the road, one road going to Ware, and the other to Springfield. At this fork in the road the hill was still descending; not so much, but still a grade. On the Ware road it continues to be a hill; on the Springfield road, just a slight grade; that at the fork in the road there was a state fence—white fence made of wood—and at the corner, the junction of the two roads, the Y, there were two or three lamp-posts. This car had broken the fence, and also one of the posts, and side-swiped the fence and one of the posts at the same time. There was a big telegraph pole, which was pushed to one side to a certain extent, but was not broken off.'' ' This was held to constitute gross negligence. The speeding in this instance was on the open highway. Whether it was beyond the legal limit does not appear from the opinion. At the time the automobile involved in this action struck the pole, the facts in the record indicate that the street car was on the other side of a broad street at least 50 feet away, and at a complete stop; that there was nothing in front of the automobile to prevent its traveling on its course.

''As further indicating the peril of driving an automobile on city streets, it may be stated that the speed, indicated by the testimony in this case, at which the automobile was traveling, the time consumed from intersection to intersection, was approximately five or six seconds, which certainly indicates the intent of the defendants to get by without due regard to the obvious danger of driving at such a high rate of speed. The appellant in this case did not take the stand to contradict or vary, in any particular, the testimony of the motorman as to the speed of the car, which we have stated, in view of the physical facts, appears to be practically incontrovertibly corroborated as a truthful estimate. It must always be borne in mind that a state of facts relating to an automobile accident out on the open highway cannot be controlling as to the conclusions to be reached upon a corresponding state of facts occurring within city limits. The former might only reasonably be held negligence, while in the latter, owing to the difference in the hazardousness of the situation, gross negligence would only be the right conclusion.

"In view of what we have stated and the uncontradicted facts in this case, we conclude that the trial court was in error in not finding gross negligence."

It is therefore ordered that the word "not" be stricken from the last clause in finding number 4, so as to make the finding conclude as follows: "That the negligence of said defendants was gross."

The judgment is affirmed.

Rehearing denied.